BROWNELL & COMPANY V. JOHN A. FULLER ET AL.

FILED SEPTEMBER 19, 1900. NO. 11,265.

1. **Trade Fixtures: IMPROVEMENTS BY LESSEE: INSTRUCTION OF COURT.** The lessees and operators of a planing mill placed machinery, consisting of a boiler and engine, therein, and at the expiration of the lease the owner of the premises claimed such property as trade fixtures; and the evidence showed, or tended to show, that the machinery was placed in an addition erected in an alley abutting the premises on which the planing mill was located. *Held,* That in a controversy over the ownership of such property it was not error for the trial court to instruct the jury that all the testimony regarding the location of the boiler and engine in the alley was to be disregarded by them, "except so far as it has a bearing, if any at all, upon the question of whether said boiler and engine were trade fixtures."

2. **Instruction: AMBIGUITY: TENDER BY COUNSEL.** Where an instruction to the jury is not satisfactory to a party to the case, because of alleged uncertainty or vagueness, it is the duty of counsel to tender an instruction free from the uncertainty or vagueness alleged to exist in the one given.

3. **Trade Fixtures: LANDLORD'S TITLE.** A tenant is not permitted to dispute his landlord's title, and as between the landlord and tenant, or one claiming through the tenant, the fact that an addition to leased premises, or fixtures thereto, are located in an alley abutting on or adjoining to such premises will not of itself affect the landlord's title thereto; and in a dispute over property so located, claimed as a trade fixture, testimony as to the location of such property can have no other bearing than in determining whether such property is in fact a trade fixture.

4. **Instruction.** Instruction given *held* not to conflict with former opinion of this court in this case.

5. ———: DEFECT IN RECORD. On the record presented, instruction could be upheld because material evidence is wanting in the record, the absence of which may be presumed to have warranted the instruction given.

6. Trade Fixture: QUESTION OF FACT. Whether certain property involved in a controversy is a trade fixture, is to be determined from all the facts and circumstances shown by the evidence.

7. Definition of Trade Fixture. Ordinarily, the requisites of a trade fixture are: (1) Actual annexation to the realty, or something appurtenant thereto; (2) appropriation to the use of that part of the realty with which it is connected; (3) the intention of the one making the annexation to make the articles a permanent accession to the freehold,—this intention being gathered from the nature of the article affixed, the relation and situation of the party making the same, the structure and mode of annexation, and the purpose or use for which it has been made. *Oliver v. Lansing,* 59 Nebr., 219, and *Freeman v. Lynch,* 8 Nebr., 192, followed.

8. Trade Fixture: INTENTION OF PARTIES. Whether it was the intention of the parties to make an article in dispute a trade fixture, is to be ascertained as announced in the foregoing rule, and is a question for the jury under proper instructions from the court.

9. Uncontradicted Testimony: CONCLUSION FOR THE JURY. When, in a controversy over the right to property, the evidence is uncontradicted, and reasonable men might draw different conclusions therefrom, it is the province of the jury to say what is the proper inference to be drawn from such evidence.

10. Verdict of Jury: REVIEW. Where a case has been tried different times, resulting in a verdict in favor of one and then the other of the parties to the litigation, the verdict of the jury in the last trial should not be disturbed unless there is a clear lack of sufficient evidence to support it.

11. Evidence: VERDICT. Evidence examined, and found to support the verdict of the jury.

ERROR to the district court for Douglas county. Tried below before KEYSOR, J.  *Affirmed.*

*A. H. Murdock* and *Isaac E. Congdon,* for plaintiff in error.

*B. N. Robertson, contra.*

HOLCOMB, J.

Two assignments of error are argued by counsel for plaintiff in error and presented to us for consideration. The first is that the court erred in one of its instructions to the jury, and the second, the verdict and judgment are not sustained by the evidence. The controversy involves the right to a portable engine and boiler claimed by the plaintiff in the court below, who is also plaintiff in error, by virtue of a chattel mortgage thereon executed by a partnership in the firm name of Silver & Smith. The defendant Fuller claims title to the property under what in law is denominated a "trade fixture."

It appears from the evidence that Fuller was the owner of certain premises in South Omaha, occupied, equipped and used as a planing mill. Silver & Smith were in possession of the premises under a lease from the owner, and while thus in possession, during the term of their lease, erected an addition to the mill building in the alley abutting on the premises, placing therein, in proper position, and in a stable and substantial manner, the engine and boiler in controversy, for the purpose of furnishing the power to run the planing mill machinery, the engine and boiler on the premises having become worthless for such purpose. The evidence shows in detail, and with much *minutia*, the manner in which the disputed property was set on foundations prepared therefor; how attached to the soil; how braced and made stable and steady, so as to serve the purpose for which it was constructed, and the alterations made in the buildings in erecting the addition and in placing the machinery in position; and how connected with the machinery for power purposes. We will not undertake herein to give a resume of the testimony with reference to the matters alluded to, deeming it not required in properly disposing of the objections presented for consideration. The leased premises, with the property in controversy as placed thereon, were sur-

rendered to the owner, the exact time being in dispute and covering a period from July 5 to the 17th of the same month. On the 8th day of July the mortgage, under which the plaintiff claims, was executed, and on the 11th was filed in the office of the county clerk.

Among other instructions to the jury, the following was given, which is excepted to: "There has been some testimony relative to the location of the boiler and engine in the alley. You are instructed that a tenant cannot deny the landlord's title to premises which he obtains by virtue of his lease. The shed or annex which Silver and Smith built and attached to the defendant Fuller's planing mill became a part of said mill, and the ground on which it stood became a part of the defendant Fuller's premises so far as Silver and Smith and their mortgagee, the plaintiff, are concerned. You are therefore instructed to disregard all of the testimony about the boiler and engine being in the alley, except so far as it has a bearing, if any at all, upon the question of whether said boiler and engine were trade fixtures or not." We find no valid objection to this instruction. Counsel, if we understand them rightly, contend that the idea of the court is not clear from the language used, and that it implies that it had no bearing at all. If the instruction was not entirely satisfactory, counsel should have tendered one free from the uncertainty existing in the one given. *Home Fire Ins. Co. v. Decker,* 55 Nebr., 346; *Chicago, B. & Q. R. Co. v. Oyster,* 58 Nebr., 1. But we do not think the instruction merits the criticism urged against it. It was proper for the court to direct the jury as to the purpose and object of the evidence as to the location of the machinery in dispute. Without an instruction of the kind given, the jury would probably have entered into a consideration of the case with a view of its disposition upon the question as to whether the property was on defendant's lot, and, if not, then he could have no valid claim to it. Such a view of the matter would not be in conformity with law. The rights of the parties in the property in dispute did not

40

depend on the question as to whether it was in the alley adjoining the leased premises, but whether it was in fact a trade fixture. The court, by its instruction, limited the jury's consideration of the evidence on this point to the only purpose for which it was applicable. The testimony as to the location of the property could have no other material bearing than in determining whether defendant's contention that it was a trade fixture, and passed to him on the surrender of the premises, was correct. Conceding the addition in which the machinery was located to be erected in the alley, this fact alone would not conclusively defeat the defendant's right to the property. It would not disprove that the machinery was a trade fixture. Its location in the alley was important and material in so far only as it might assist in determining whether it was a trade fixture, and the evidence in relation thereto could serve no other purpose in the trial of the case. The addition in which the machinery was placed was a part of the leased premises. The tenants were not in a position to dispute the title of their landlord thereto. As between him and them, their possession was his also. The location of the addition, and the machinery therein, in the alley adjoining the leased premises, did not thereby preclude the machinery from becoming a part of the leased premises, other requisites of a fixture being established by the evidence. As between the parties for all other purposes, its location in the alley made no difference; it belonged to, and formed a part of, the leased premises. *Bliss v. Whitney*, 9 Allen [Mass.], 114; *Arnold v. Crowder*, 81 Ill., 56; *Redlon v. Barker*, 4 Kan., 445; *Haider v. St. Paul Fire & Marine Ins. Co.*, 70 N. W. Rep. [Minn.], 805; *McGorrish v. Dwyer*, 78 Ia., 279. We do not regard the instruction given as being in conflict with the views of this court expressed in a former opinion in this same case. It was there said, "Whether the machinery was placed in Fuller's building, or in a public alley joining his premises, was a question of fact for the jury to determine from the evidence." 48 Nebr., 145, 151.

The language quoted was not directed to any point decided in that opinion. It may be regarded as *obiter dictum*. But if it were relative to a question therein decided, it does not conflict with the instruction given. In a controversy as to the place of location of the addition containing the machinery, it is doubtless a question of fact to be determined by the jury, and yet this would not conflict with the rule laid down in the instruction limiting the purpose of such evidence to the one question of determining whether the machinery was a trade fixture. The instruction, upon the whole, is not open to the objections urged, and was as favorable to the plaintiff as he was entitled to under the evidence. We are justified on the record presented to us in sustaining the instruction, because there is presented no evidence of any alley adjoining the leased premises. While mention is made of the introduction of a plat of the city where the real estate is situated, none is incorporated in, or attached to, or made a part of the bill of exceptions. We prefer, however, to consider the subject on the assumption that all the evidence which purports to be in the record is there.

As to the second contention, that the evidence is insufficient to support the verdict and judgment, it is urged that, on account of the character of the property in controversy, the purposes for which it was used, the manner of placing the boiler and engine in position and the intention of the parties, it is made manifest that the property is not a trade fixture, and did not attach as such to the property in which situated. We think there is some merit in this contention, and yet we do not, from the entire record, regard ourselves as being justified in saying that a finding that the property is a trade fixture may not be deducible from the evidence. As a basic point from which to consider the question, it is to be regarded as one of fact,—a proper conclusion regarding which is to be arrived at from an examination of all the facts and circumstances shown by the evidence. In *Oliver v. Lansing*, 59 Nebr., 219, it is said by NORVAL, J., writing the opinion

of the court: "It is easy to define a fixture, but often difficult to determine what particular article may fall within the definition." As to what a fixture is, the rule laid down in *Freeman v. Lynch*, 8 Nebr., 192, was reiterated and adhered to in the *Lansing Case*. It is held in the third paragraph of the syllabus in *Oliver v. Lansing*: "Ordinarily, the requisites of a fixture are: (1) Actual annexation to the realty, or something appurtenant thereto; (2) appropriation to the use of that part of the realty with which it is connected; (3) the intention of the one making the annexation to make the article a permanent accession to the freehold,—this intention being gathered from the nature of the articles affixed, the relation and situation of the person making the same, the structure and mode of annexation, and the purpose or use for which it has been made. *Freeman v. Lynch*, 8 Nebr., 192, followed." Supporting the rule adopted by this court are: *Teaff v. Hewitt*, 1 Ohio St., 511, 529; *Helms v. Gilroy*, 26 Pac. Rep. [Ore.], 851; *Binkley v. Forkner*, 117 Ind., 176; *Dudley v. Hurst*, 67 Md., 44; *Henkle v. Dillon*, 15 Ore., 610. As disclosed by the evidence in the case at bar, there are many of the elements requisite to a trade fixture as defined in the cases above cited. The intention of the parties to be gathered, as indicated in the rule above quoted, is a matter to be submitted to a jury under proper instructions, which we hold were given in the present case. The evidence tends to prove that the addition or annex in which the boiler and engine were placed was constructed in such a manner as to become a portion of the main structure, and in the same manner as additions to structures are ordinarily erected. The roof appears to have been a continuation of the roof then on the building. The addition was joined to the main structure in the ordinary way, the partition between it and the main building being removed, thus forming but one room, and the partition material used in constructing the addition. The boiler and engine were placed in this addition in a solid and substantial manner; the foundations being strong and

solid and imbedded in the earth; the excavations being walled up with stone and brick, forming a solid piece of masonry. The material used in the construction of the machinery and braces for support and steadiness were abutting on, and nailed to, the main building. The different pieces were connected together with iron rods, and the boiler had attached to it a smoke-stack some twenty-four feet in length, extending through the roof of the addition, or annex. The machinery was attached to the soil and also to the building in which situated. Its permanency of character and attachment to the freehold could scarcely be more thorough or complete. It may be, and as we think, truly, said that the manner of its construction was necessary in order to accomplish the uses and purposes for which it was constructed, and therein lies the difficulty in arriving at a correct conclusion. It is for this same reason that there is ground for regarding the property in a twofold light, both as a fixture and a movable chattel. There was evidence before the jury that the mill ceased to be operated, and the premises surrendered to the owner, July 5; that in such transaction there was no exception or reservation as to the property in controversy,—a circumstance which, if found true by the jury, might properly be regarded as evidence tending to show the intention of the parties relative to such property. There is no substantial variance or contradiction in the testimony as to the manner of the erection of the addition to the leased premises, and the construction of the machinery in controversy placed therein. It had all the requisites of a stable and permanent attachment to the leasehold premises; and there is merit in the statement of counsel for mortgagees, wherein he says: "In no less permanent manner could the boiler and engine have been anywhere placed, in order to make use of them." The proper inference to be drawn from the testimony is one regarding which different persons may honestly disagree. The case seems to fall within the principle announced in *Habig v. Layne*, 38 Nebr., 743, wherein it is

held that where the evidence is uncontradicted, and reasonable men might draw different conclusions therefrom, it is for the jury, and not the court, to say what inference is warranted by the evidence.

Another reason why the verdict should stand, unless clearly wrong, is that heretofore a verdict for the plaintiff, by direction of the court, and judgment thereon, on error to this court, has been reversed, and the case remanded for new trial. *Fuller v. Brownell,* 48 Nebr., 145. The cause was then reversed because of the exclusion of testimony offered to prove the property in controversy had become trade fixtures. The case was again tried in the district court, resulting in a verdict and judgment for the defendant, which, upon appeal to this court, was again reversed and remanded because of the form of the findings in the verdict. *Brownell v. Fuller,* 57 Nebr., 368. A third trial has been had in the district court and, upon the issues joined, a verdict has again been returned by the jury for the defendant Fuller. After the three trials, the first verdict being in favor of one party, the two succeeding in favor of the other, following the rule in *Summers v. Simms,* 58 Nebr., 579, the verdict should not be disturbed, unless there is clearly a lack of sufficient evidence to support it.

We hold that the jury were warranted, under the evidence, in reaching the conclusion evidenced by their verdict, and the judgment is, therefore,

AFFIRMED.