Swift Lumber & Fuel Company, appellee, v. Clemma
Hunt Elwanger, appellant.

Filed October 26, 1934. No. 28822.

*Beghtol, Foe & Rankin,* for appellant.

*Burkett, Wilson, Brown & Van Kirk,* contra.

Heard before Goss, C. J., Rose, Good, Eberly, Day and
Paine, JJ., and Meyer, District Judge.

Meyer, District Judge.

This is an action in replevin brought by the plaintiff,
Swift Lumber & Fuel Company, a corporation, vendor
under contracts of conditional sale, against the defendants,
Arnold C. Koenig, vendee in default, and Clemma Hunt
Elwanger, to recover one Frigidaire compressor, seven
cabinets and coils, pipes, tubes, brackets and fittings; one
triple service boiler, oil burner, thermostat, pipes, tubes
and fittings; and one 600-gallon oil tank; the defendant

Elwanger being the record owner of the property in which same were installed. No bond was executed. The property was not reduced to possession and the action proceeded under the statute as one for damages. The defendant Koenig made default. During the trial, by agreement of the parties, the jury were dismissed and hearing proceeded to the court. There was judgment for the plaintiff against both defendants for $1,644.40. Defendant Elwanger has appealed.

There is little dispute in the evidence. In July, 1931, a written contract was made between the defendant Clemma Hunt Elwanger and one Maud Koenig, wife of the defendant Arnold C. Koenig, in which the former agreed, upon the latter making the payments and performing the covenants therein contained, to convey to her a certain residence property in the city of Lincoln. As part of the consideration the grantee assumed a $6,000 mortgage on the real estate and gave the grantor her note with interest for the balance. The contract empowered the grantee to take possession of the property and remodel it according to certain plans and specifications and the grantor advanced $4,000 for this purpose on grantee's note with interest therefor, receipt of which advancement is acknowledged in the contract. If additional funds were needed, grantor had the option of furnishing same, or, if secured elsewhere and grantee had then faithfully performed her contract, grantor agreed that a second mortgage covering said loan, but not to exceed $2,000, could be placed on the property, which would take precedence over her rights in the premises. It was also provided that grantee should pay all taxes assessed against said property; that she should not permit any mechanics' liens to be filed against it and that the remodeling would be completed before October 1, 1931, at which time grantee agreed to refinance the premises and pay the grantor the amount then due her, with interest. The contract also stated that, upon failure to complete the improvements or otherwise perform its

conditions, the grantor might declare a forfeiture and reenter.

The negotiations leading up to said contract were conducted with the defendant Koenig, and it is conceded by all parties that he was the real purchaser, the contract running to his wife because of a judgment outstanding against him. The contract was never filed or recorded, but Koenig immediately took possession of the premises, changing partitions and stairways, and otherwise made alterations and improvements therein, according to plans, converting the residence into an apartment house with seven apartments, and superintending the work himself. During the course of the remodeling he purchased from the plaintiff for installation in said building the articles in dispute, under two contracts of conditional sale, which provided that title should remain in the plaintiff until payment was made in full. Payments of approximately 10 per cent. of the purchase price were made upon signing the contracts. No other payments were made. Installation was made by plaintiff and was completed November 25, 1931.

November 9, 1931, the defendant Koenig solicited and the defendant Elwanger advanced $500 additional under said contract, and on November 18, 1931, she made another advance of $300. Shortly thereafter several mechanics' liens were filed against the property by parties from whom Koenig had purchased materials used therein and for which he had failed to make payment. Whereupon, after some negotiations, Mrs. Elwanger declared a forfeiture of the contract, and on December 30, 1931, a written cancelation and rescission thereof were entered into between the parties; the grantee's notes were returned and possession was restored to the grantor. Apparently all the money advanced was expended in making the improvements except $1,000, which it later developed Koenig had retained for his own services. After the contract was canceled, an instalment on the articles now in dispute being past due, plaintiff made demand of each defendant

for payment, and demand for possession of said articles, all of which demands were refused. Thereafter, on January 29, 1932, its conditional sale contracts were filed.

In its petition, plaintiff claims, among other things, that the defendant fraudulently obtained the articles in dispute by pretending and representing to it that Koenig was the owner of the building in which they were installed and that the defendants later fraudulently canceled the muniments of title. It is also alleged that, in making the alterations and contracting for such articles, Koenig was acting as Mrs. Elwanger's agent.

The articles in question were sold to Koenig with full knowledge of the location of the property in which same were to be installed and without any investigation by plaintiff of the record title thereto. Koenig did not represent himself to plaintiff as acting for Mrs. Elwanger; neither did she hold him out as such. In fact, plaintiff never even talked with Mrs. Elwanger about these articles until after Koenig had defaulted under both contracts. We have carefully examined the evidence and it wholly fails to establish either agency or fraud and connivance. The principal question presented by the record has to do with the plaintiff's right to recover in replevin from the defendant Mrs. Elwanger, the vendor under an executory contract of sale of the real estate in which the articles were installed, who, upon default by the vendee under said real estate contract, has enforced cancelation thereof and has reentered. Mrs. Elwanger contends that, so far as she is concerned, the articles became a part of the real estate when they were installed and that, therefore, replevin does not lie.

Whether an article annexed to the real estate has become a part thereof is a mixed question of law and fact. *President and Directors of Ins. Co. v. Buckstaff,* 3 Neb. (Unof.) 632; *Brownell & Co. v. Fuller,* 60 Neb. 558. In determining this question, the following tests, while not all inclusive, have received general approval, viz.: "1st. Actual annexation to the realty, or something appurtenant

thereto. 2d. Appropriation to the use or purpose of that part of the realty with which it is connected. 3d. The intention of the party making the annexation to make the article a permanent accession to the freehold. This intention being inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." *Freeman v. Lynch,* 8 Neb. 192; *Frost v. Schinkel,* 121 Neb. 784. The third test, namely that of "intention," appears by the clear weight of modern authority to be the controlling consideration. See Ewell, Fixtures (2d ed.) *22; 11 R. C. L. 1062, sec. 6; 26 C. J. 654; *Edwards & Bradford Lumber Co. v. Rank,* 57 Neb. 323.

Moreover, under the view that intention constitutes the chief criterion, it is now generally held that unless the articles are of such a nature as to lose their identity by incorporation in the real estate, such as nails, lath, plaster, etc., or unless there is a complete merger with the realty by incorporation of the chattels so as to prevent removal without material injury to the realty, the parties may agree that such articles shall retain their personal character and be removable, and such contract is binding between the parties. It is also held that such an agreement may be and is implied where articles of an ambiguous nature, such as the articles involved in this case, are sold with the reservation that title shall not pass until they are paid for, or where a mortgage is given on articles before their annexation. In such case their annexation to the realty of the purchaser does not render them a part of the realty and irremovable as between the parties. 26 C. J. 676, 678, 679, and cases cited; 11 R. C. L. 1064, sec. 8; *Edwards & Bradford Lumber Co. v. Rank, supra; Arlington Mill & Elevator Co. v. Yates,* 57 Neb. 286; *Frost v. Schinkel, supra.*

A more difficult question arises when the interest of third persons is involved. When the rights of such persons, without notice, relying on the apparent character of

the articles annexed, are adversely affected thereby, the intention of the parties as inferred from the nature of the articles affixed, the structure and mode of annexation, and the apparent purpose or use for which the annexation has been made, is held to control over an intention expressed in a secret contract of conditional sale. To this general effect is *Geer Co. v. Wolcott,* 124 Neb. 306, cited by defendant, in which it was held that trade fixtures permanently affixed to the realty became a part thereof and subject to the liens of those who had furnished material and labor for the housing and installation thereof, unaffected by such conditional sales contract. However, unless otherwise controlled by statute, the courts generally have sought to uphold the manifest intention as it appears from the contract and permit removal when the rights of third persons are not adversely affected thereby.

In *Arlington Mill & Elevator Co. v. Yates, supra,* this court held: "Articles, such as machinery, of an ambiguous character, and which may or may not become attached to the freehold according to the circumstances, will retain their character of personalty by virtue of a contract between vendor and vendee to that effect, when the rights of innocent purchasers relying on their apparent character are not involved."

In *Edwards & Bradford Lumber Co. v. Rank, supra,* an engine was purchased and placed in a flouring mill to propel the machinery therein. It was placed upon a suitable brick foundation embedded in the ground, being securely attached to the foundation by bolts. The tank was set upon a similar foundation and 40 feet of gas pipe was buried in the ground. Purchaser executed a chattel mortgage on the engine to secure the payment of purchase price. The court held that the giving of the mortgage evinced an intention that the engine should retain its status as personalty, even though physically attached to the freehold by the owner. The court further found that it could be removed without substantial injury to the

realty and that the mortgagee should prevail over the lienors thereof.

In *Holland Furnace Co. v. Bird,* 45 Wyo. 471, the court said: "By the weight of authority, * * * the intention manifested by the conditional sale agreement to retain title in the vendor and to preserve the character of the chattel as personalty after annexation to the real property (so as ordinarily to constitute a fixture) prevails against the prior mortgagee of the realty, so that the chattel can be removed by the seller for the vendee's failure to perform the contract, unless its severance will so injure the freehold as substantially to diminish the creditor's original security. The reason is that, as the mortgage is merely security, the mortgagee has advanced nothing in reliance on the value of the subsequently annexed chattels, and he should not be permitted to acquire them as a part of his security, contrary to the intention of the party making the annexation and to the injury of the seller. 26 C. J. 684, sec. 49, and cases cited; 13 A. L. R. 461, note; 23 A. L. R. 806, note; *Industrial Bank of Richmond v. Holland Furnace Co.,* 109 W. Va. 176; * * * *Holt v. Henley,* 232 U. S. 637." See, also, *Frost v. Schinkel, supra; People's Savings & Trust Co. v. Sheboygan Machine Co.,* 212 Wis. 449; *North Shore Co. v. Broman,* 188 Minn. 433; *General Motors Acceptance Corporation v. Farm & Home Savings & Loan Ass'n,* 227 Mo. App. 832.

The same reasoning and rule is held to apply to a vendor of land under an executory contract of sale. In *Harris v. Hackley,* 127 Mich. 46, machines sold under a contract of conditional sale were placed by the vendee in a building which he had purchased of defendant under a contract providing that, in the event of failure to pay the purchase price, defendant was entitled to a surrender of the property with all improvements. The court held that the conditional vendor of the machines was entitled to same as against the vendor of the land, stating that the defendant stood in the position of an equitable mortgagee of the real estate, being a contract vendor. The court said:

"But he was a prior mortgagee, and did not take his security upon the faith of any appearance that this property was a part of the real estate."

In *Hendy v. Dinkerhoff*, 57 Cal. 3, plaintiff leased to L. an engine and boiler with privilege of purchase. L. affixed them in permanent manner to the land of the defendant in the possession of L. under a contract for purchase. The contract provided that if L. failed to perform, all the tools and machinery put on the land by him should belong to defendant. The court held that the plaintiff could recover the engine and boiler or their value from the defendant.

In *Davis v. Bliss*, 187 N. Y. 77, 10 L. R. A. n. s. 458, the vendor of machinery under a conditional sale contract brought an action in conversion against the vendor of the real estate to which said machinery had been attached by the purchaser, which said purchaser was also the vendee under and had made default on the real estate contract. The real estate contract provided for instalment payments and also provided for payment of $1,000 by improvement of said property, by labor and repairs and new machinery, unencumbered by mechanic's lien, mortgage or purchase price. Another provision provided that all improvements, repairs and machinery should become a part of the realty, not to be removed without the consent of the vendor. The machinery was permanently annexed. The court said: "We shall assume that under ordinary circumstances the engine would have become a part of the realty." And say further that no more favorable rule should apply to the vendor of real estate than to a mortgagee, and the reason assigned for the court's holding is that the defendant did not in any manner part with value or lose any rights on account of the engine attached. The court also say that stress is laid upon the fact that, when the purchaser installed the engine, the old engine was removed and appropriated to his use, and then state that, if the vendor of the real estate has been wronged thereby, she has a right of action against the wrong-doer.

The following texts and authorities likewise support this view. 26 C. J. 688, and cases cited; *Miller v. Wilson,* 71 Ia. 610.

These authorities also state a well-established exception to the rule set out, where the vendor, relying upon their apparent character and without notice otherwise, has made advances by reason of the annexation. To the same effect is *Dauch v. Ginsburg,* 214 Cal. 540. In that case a construction loan was secured from a loan association which took a mortgage on the property, advances under said loan to be made from time to time as the work progressed. At the time the loan was contracted, it was agreed between the parties that security for said loan should be the real estate, together with the completed building according to plans and specifications, which included plumbing fixtures. The court held that the vendor of the plumbing fixtures, later installed under a conditional contract of sale made subsequent, could not assert the conditional character of such sale as against the mortgagee, the theory being that the agreed security would otherwise be diminished.

Do the facts in the case at bar bring the parties within this exception?

While assuming that, as to innocent third parties relying on their apparent character, the boiler, burner and tank would be classed as permanent fixtures, yet we think the evidence discloses that they can be removed without material injury to the basic structure in which installed. During the remodeling, the old boiler was removed, leaving a depression in the concrete in the basement floor. The new boiler was set on a cast iron base across this depression, facing in a different direction and resting upon bricks to make it level. Concrete was filled in underneath and up around the edges, possibly three-eighths of an inch, to make it tight, but it was not fastened by bolts or otherwise. It was hooked up with the old radiators and pipes already there. The burner itself is set in the fire box in the boiler and the operating mechanism, including the fan, pump and electric motor, rest on the floor in front

of the boiler. There is a connecting pipe coming out through the lower door to the fan and motor and the supply pipe extends up to the ceiling and over and out through the outer wall to the tank which is buried in the yard at a depth of about six or eight inches. The boiler is about six feet high, five feet long and two and a half feet wide. The ordinary entrance was not sufficiently large to admit it and a section of the basement wall was taken out and it was brought in through this wall. At this opening a permanent door was made. To remove the boiler it would only be necessary to unscrew the fuel pipe from the burner, the motor, fan and tank; disconnect the burner from the steam main, the water line and the domestic hot water system and lift the boiler from its base. It is possible that in removing the base a slight film of cement around the edge would be chipped away, but no damage would be done thereby. There is some dispute as to whether or not the furnace can be taken through the doorway made in the basement wall, but it appears that the most that would be necessary would be to remove the casing. The tank would need to be dug up and the pipe disconnected.

The real estate contract provided that the alterations and improvements should be made in accordance with definite plans. The evidence clearly shows that the heating plant was not included therein. After the construction was nearly completed, Koenig found that the old boiler was not serviceable and he then purchased the heating equipment in question. The contract for it was made October 30, 1931, and it was installed November 25, 1931. The money which Mrs. Elwanger loaned the Koenigs was all advanced prior to the date of such installation. Koenig, who was called as a witness for the plaintiff, testified that he told Mrs. Elwanger about the purchase price and the contract, but is indefinite as to the date on which these conversations took place. At two points in her testimony Mrs. Elwanger says, without fixing the time, that Koenig told her that he had ordered a furnace. At another point

she says she did not know of it until after it was installed.

If prior to the time she made the last advancement she knew these articles were to be installed and that they were being purchased under contract of conditional sale, then no doubt she would be liable for their detention. However, we think she is equally liable under her own statement that she did not even know that the boiler and tank were to be furnished and did not learn of it until they were installed, for without such knowledge, since there was no contractual duty imposed on Koenig to install them, it cannot be said that she made any of the advances on the appearance of these articles as a part of the real estate or in reliance upon the value of such articles annexed as a part of her security. In view of the nature of the articles, the evidence and the authorities cited, we think the plaintiff may assert its right to such articles under its contract of conditional sale as against both defendants as was held by the trial court.

In the installation of the refrigerating system, the compressor was set on concrete blocks on the basement floor and connected with the wiring and water system. Two tubes ran from the compressor to a manifold board which was set in an upright position immediately behind it, said board resting on the floor and being nailed to the joist overhead. From this board two tubes branched to each refrigerating unit, being carried up in the walls and coming out through the plaster at about twenty-four inches above the floor, at which points they were connected to the cabinets, which, together with the coils, were placed in the several apartments. These tubes are one-half and one-fourth inches in diameter and one carries the refrigeration fluid to the units and the other carries gas back to the compressor. In some instances the cabinets, or ice boxes, were placed in recesses built in the kitchenets for the purpose of housing them and the top of each cabinet forms a base for a gas stove.

The plans and specifications covering the alterations and the improvements to be made were not offered in evidence

and the testimony is silent as to whether the refrigerating system was included therein. It is shown, however, that shortly after the real estate contract was made the defendants discussed the installation of such a system and at that time Mrs. Elwanger suggested a certain make that she considered would be more economical than the one Koenig had in mind. The contract for the Frigidaire equipment in question was made shortly thereafter. While the installation was not completed until after Mrs. Elwanger had made the last advancement to Mr. Koenig for improvements, yet the piping was put in before the plastering was done and prior to such advancement. It also appears that Mrs. Elwanger visited the premises frequently during the course of the construction and took an interest in what was being done. There can be little doubt that she knew of the installation of this piping. Mrs. Elwanger denies any knowledge of the conditional character of the sale until after the cancelation of her contract, and while Koenig testified that he told her of its terms, he was unable to fix the date. We think the record, as a whole, clearly discloses that the parties mutually contemplated that the remodeled building would include a refrigerating system, and it not appearing that Mrs. Elwanger then had notice of the conditional character of the sale to Koenig, she had a right to expect when she made the last advancement that such Frigidaire equipment annexed would form a part of her security. In fact, she testifies that when she made the last advances Koenig told her, in effect, that it would cover everything, and this testimony is not denied.

Having failed to place their contract of conditional sale on file prior to the installation or before the last payments were made, or to advise with Mrs. Elwanger in whose name was the record title, thus permitting her to make additional advances totaling almost as much as the complete cost of the Frigidaire, in the belief that such equipment would be a part of her security therefor, they ought not now, having permanently affixed same to the real

estate, to be permitted to assert as to her the personal character of such property under the conditional clause in their sale contract, even though such property may be removed without material injury to the real estate. We think the facts bring the parties within the exception cited as to the refrigerating system. The trial court found that plaintiff was damaged for the unlawful detention of this equipment in the sum of $819.80. The judgment of the trial court against the defendant Elwanger is reduced from $1,644.40 to $824.60.

AFFIRMED AS MODIFIED.

EBERLY, J., dissents in part.