The entire amount of Valpak's payments to Direct Marketing was taxable under § 056.05A, because those payments constituted purchases of labor and, in some cases, creative talent for work on advertising materials. The regulation speaks of taxes generally and does not differentiate between sales and use taxes. See *id*. However, it is well established that if an "item is purchased in Nebraska, the sales tax applies. If the item is purchased outside of Nebraska, the use tax applies." See *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 119, 459 N.W.2d 519, 526 (1990). Accordingly, the taxes imposed on Valpak's purchases from Direct Marketing, a Florida business, were properly classified as use taxes.

Under § 056.05A, Valpak was required to pay use taxes on the payments it made to Direct Marketing. Therefore, the district court did not err by upholding the assessment of such taxes on those payments.

## CONCLUSION

For the foregoing reasons, we find no error on the record in the district court's conclusion that under § 056 of the Department's regulations, Valpak was an advertising agency and was liable for use taxes on its payments to Direct Marketing. Therefore, we affirm the judgment of the district court which affirmed the decision of the Tax Commissioner to deny Valpak's petitions for redetermination.

AFFIRMED.

HEAVICAN, C.J., participating on briefs.

———————

THOMAS R. GRIFFITH AND HEATHER GRIFFITH, APPELLEES, v. DREW'S LLC, APPELLANT.

___ N.W.2d ___

Filed March 27, 2015.    No. S-14-456.

1. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the party's brief.
2. **Courts: Appeal and Error.** The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.

3. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

4. \_\_\_\_: \_\_\_\_. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.

5. **Trial: Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.

6. **Real Estate: Property: Annexation.** Whether an article annexed to the real estate has become a part thereof is a mixed question of law and fact.

7. **Damages.** While the amount of damages presents a question of fact, the proper measure of damages presents a question of law.

8. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

9. **Judges: Evidence: Appeal and Error.** The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.

10. **Deeds: Merger.** The rule or doctrine of merger is that upon the delivery and acceptance of an unambiguous deed, all prior negotiations and agreements are deemed merged therein. This rule is equally applicable where prior oral negotiations result in a written contract.

11. **Deeds: Merger: Fraud.** The doctrine of merger does not apply where there has been fraud or mistake.

12. **Fraud.** Where one has a duty to speak, but deliberately remains silent, his or her silence is equivalent to a false representation.

13. \_\_\_\_. In fraudulent concealment cases, existence of a duty to disclose the fact in question is a matter for the determination of the court, although, if there are disputed facts bearing upon the existence of the duty, they are to be determined by the trier of fact under appropriate instructions as to the existence of the duty.

14. \_\_\_\_. Justifiable reliance must be decided on a case-by-case basis.

15. **Actions: Fraud.** Where ordinary prudence would have prevented a deception, an action for the fraud perpetrated by such deception will not lie.

16. **Real Estate: Property: Words and Phrases.** Fixtures are usually thought of as personal property which has become a part of the real estate, but a trade fixture is defined as personalty.

17. **Real Estate: Property: Appurtenances: Words and Phrases.** Trade fixtures are articles annexed to the realty by a tenant for the purpose of carrying on trade and are ordinarily removable by him during his term.

18. **Real Estate: Property: Appurtenances.** In determining whether an article annexed to real estate has become a part of the real estate, a court should consider (1) actual annexation to the realty or something appurtenant thereto; (2) appropriation to the use or purpose of that part of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold, said intention being inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

19. \_\_\_\_: \_\_\_\_: \_\_\_\_. The second component of the test to determine whether an article annexed to real estate has become a part of the real estate focuses on whether a chattel is specific to the type of business conducted on realty, or on whether it is the type of property that would generally be found on realty and that would have utility to a hypothetical purchaser of the underlying realty.

20. **Courts: Real Estate: Property: Words and Phrases.** It is incumbent on the court to define a fixture, but whether an article of property is a fixture in a particular instance depends upon the facts of that case.

21. **Real Estate: Property: Damages.** The rule that the measure of damages for fixtures is the difference in value of the real property before and after the removal of the articles is not an exclusive rule.

22. **Real Estate: Sales: Property: Valuation: Damages.** Fixtures ordinarily have a value separate and apart from the realty to which they are attached. That value may properly be submitted to the fact finder to enable it to more accurately determine a loss suffered by a purchaser.

23. **Evidence: Words and Phrases.** Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

24. **Evidence: Proof.** For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence.

25. **Trial: Testimony.** The weight to be given a witness' testimony is a question for the trier of fact.

26. **Trial: Evidence: Records: Appeal and Error.** The erroneous admission of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence.

Appeal from the District Court for Custer County, KARIN L. NOAKES, Judge, on appeal thereto from the County Court for Custer County, TAMI K. SCHENDT, Judge. Judgment of District Court affirmed.

Matthew S. McKeever, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellant.

Christopher P. Wickham, of Sennett, Duncan, Jenkins & Wickham, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

After two buyers closed on their purchase of a building that had formerly been leased as a dental clinic, they discovered that the interior doors had been removed. They sued the seller. The county court entered judgment for the buyers and awarded damages based on the cost they paid for replacement doors. The district court affirmed. Upon further appeal, we conclude that the doctrine of merger did not bar their claim and that the doors were fixtures rather than trade fixtures. We affirm.

## BACKGROUND

For ease of understanding, we generally refer to the parties as "the buyers" and "the seller" throughout this opinion. But for the sake of completeness, we identify the respective parties. The buyers, Thomas R. Griffith and Heather Griffith, purchased the real estate from the seller, Drew's LLC. The seller's sole member was Andrew Solomon. Although we recognize that this business entity is a legal entity separate and distinct from its member, for purposes of this opinion, we will refer to the business entity and its member interchangeably as "the seller." The buyers and the seller signed a purchase agreement on February 8, 2012.

The seller had previously renovated the building for use as a dental clinic. Through May 2012, the seller leased the property to a dental practice owned by the seller's wife (former tenant). The former tenant began operating at a new location in January 2012.

The buyers planned to transform the building into their personal residence. The buyers first viewed the interior of

the property with the seller in approximately November 2011. At that time, the dental practice was still operating in the building.

The buyers also viewed the property after the dental practice had relocated. The buyers could not recall the exact date of the visit, but one of the buyers testified that "[i]t was between the February date and the closing date." Presumably, "the February date" referred to the date of the purchase agreement. Although the dental equipment was no longer in the building, the interior doors remained.

The parties never discussed whether the interior doors would stay with the property. At no time did the seller state that the doors were excluded from the purchase agreement. The seller and the former tenant removed the doors on Memorial Day 2012.

The parties closed on the property on June 1, 2012. The buyers did not inspect the property within the 24-hour period immediately before the closing, even though the purchase agreement would have permitted them to do so. After closing, one of the buyers discovered that the interior doors had been removed. Although the buyers requested that the doors be returned, the seller refused.

The buyers commenced a small claims action against the seller. They alleged that the interior doors were fixtures included in the purchase, and they sought damages or the return of the property. The seller transferred the matter to the regular civil docket of the county court. In an answer, the seller asserted that the items of property were trade fixtures. The seller also affirmatively alleged that the claim was barred by the doctrine of merger.

The county court, without a jury, conducted a trial. Evidence established that the doors were commercial, 60-minute-rated fire doors. The former tenant had purchased and installed the interior doors in 2004. The seller testified that the doors were in good, used condition and that they had "scuffing" and "a couple had dents."

In replacing the doors, the buyers did not purchase the same type of door. Instead, they purchased residential doors that were not fire rated. These prehung, unfinished, solid-core oak

doors cost approximately $250 each, and the doorknobs cost approximately $35 each.

The buyers obtained a quote from a lumber company for doors similar to those removed. The company's manager prepared an estimate for a new "90-minute fire door, flush oak, . . . a solid core slab door with the gypsum core, typically used in commercial applications." The estimate included the cost "to machine the door to specifications of the existing frame." In preparing the estimate, the manager took information from the buyers, called a door manufacturer to obtain a price, and then added the lumber company's general markup. He had never seen the doors at issue. He testified that his estimate, received in evidence over the seller's relevance and foundation objections, was an estimate commonly used in the business. Over the seller's objection, the manager testified that he quoted a per-door price of $380 plus a $39 "hinge and knob match."

The seller presented contrary evidence regarding the value of the doors. A construction worker in the area, who had familiarity with prices paid by contractors, examined the doors and opined that the doors were not worth $270 each. He felt that $75 would "be the going price," but that they were possibly worth even less due to their weight.

The county court entered judgment in favor of the buyers. The court found that the interior doors were not trade fixtures as defined by Neb. Rev. Stat. § 77-105 (Cum. Supp. 2014). The court also determined that an exception to the doctrine of merger existed due to fraud and misrepresentation by the seller. The court found that the buyers replaced 12 doors and that the cost of replacement was $250 per door plus $35 per doorknob. The court entered judgment against the seller in the amount of $3,420, plus costs.

The seller appealed to the district court, and the district court affirmed. The district court reasoned that the doors were not trade fixtures because "doors are not fixtures used directly in the field of dentistry" and that the doctrine of merger did not apply because the buyers pursued the action based on misrepresentation under the law of torts and not as an action on a contract. The district court determined that the county court's

findings were not clearly erroneous and that the evidence supported the county court's award of damages.

The seller timely appeals. We moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

The seller assigns 17 errors. It alleges, consolidated and restated, that the county court erred in (1) failing to apply the doctrine of merger, (2) failing to find that the doors were trade fixtures owned by the former tenant, (3) determining damages, and (4) overruling the seller's evidentiary objections.

[1] The seller also assigns that the county court erred in finding that an appraisal was done, at which time the appraiser observed the doors; in finding that the buyers were damaged by any misrepresentations; in finding that a duty existed to disclose that the interior doors belonged to the former tenant and were going to be removed prior to the transfer of the deed, and in overruling the seller's foundational objections to testimony regarding whether the dental practice had moved. However, the seller's brief contains no corresponding argument concerning these alleged errors. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the party's brief.[2] Thus, we do not consider the errors assigned but not argued in the seller's brief.

## STANDARD OF REVIEW

[2-4] The district court and higher appellate courts generally review appeals from the county court for error appearing on the record.[3] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4] In instances when an

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment*, 287 Neb. 779, 844 N.W.2d 755 (2014).

[3] *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 835 N.W.2d 62 (2013).

[4] *Id.*

appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.[5]

[5] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. And an appellate court does not reweigh the evidence but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.[6]

[6] Whether an article annexed to the real estate has become a part thereof is a mixed question of law and fact.[7]

[7] While the amount of damages presents a question of fact, the proper measure of damages presents a question of law.[8]

[8,9] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[9] The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.[10]

## ANALYSIS

The seller principally contends that the doors were trade fixtures. But it also relies upon the doctrine of merger. If that doctrine applies, we would not need to determine the character of the doors as fixtures or trade fixtures. Thus, we first address the argument pertaining to merger.

---

[5] *Id.*

[6] *Brook Valley Ltd. Part. v. Mutual of Omaha Bank*, 285 Neb. 157, 825 N.W.2d 779 (2013). See, also, *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990).

[7] *Swift Lumber & Fuel Co. v. Elwanger*, 127 Neb. 740, 256 N.W. 875 (1934).

[8] *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012).

[9] *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

[10] *Id.*

### Doctrine of Merger

[10,11] The rule or doctrine of merger is that upon the delivery and acceptance of an unambiguous deed, all prior negotiations and agreements are deemed merged therein. This rule is equally applicable where prior oral negotiations result in a written contract.[11] However, the doctrine of merger does not apply where there has been fraud or mistake.[12]

The county court applied the exception based upon the seller's fraud and misrepresentation. The court reasoned that the buyers had a reasonable belief the interior doors were part of the purchase agreement and that their belief was reinforced when the doors remained after the purchase agreement had been signed and the dental practice had relocated. The court determined that the failure to disclose that the doors belonged to the former tenant and would be removed amounted to a misrepresentation and a fraud.

[12] Where one has a duty to speak, but deliberately remains silent, his or her silence is equivalent to a false representation.[13] Although the circumstances of each case typically determine whether a duty to disclose exists, there are several situations which have been consistently recognized as creating a duty to disclose.[14] Those situations have been set forth in the Restatement (Second) of Torts.[15] The Restatement recognizes a duty to disclose "facts basic to the transaction" if a party to the transaction "knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."[16] The Restatement also acknowledges a duty

---

[11] *Beltzer v. Willeford Farms*, 215 Neb. 102, 337 N.W.2d 406 (1983).

[12] *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986).

[13] *Streeks v. Diamond Hill Farms*, 258 Neb. 581, 605 N.W.2d 110 (2000), *overruled in part on other grounds*, *Knights of Columbus Council 3152 v. KFS BD, Inc*., 280 Neb. 904, 791 N.W.2d 317 (2010).

[14] *Zawaideh v. Nebraska Dept. of Health & Human Servs*., 280 Neb. 997, 792 N.W.2d 484 (2011).

[15] See Restatement (Second) of Torts § 551 (1977).

[16] *Id*., § 551(2)(e) at 119.

to disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading."[17]

[13] In fraudulent concealment cases, existence of a duty to disclose the fact in question is a matter for the determination of the court, although, if there are disputed facts bearing upon the existence of the duty, they are to be determined by the trier of fact under appropriate instructions as to the existence of the duty.[18] But, here, the facts are essentially undisputed. Thus, we review the question as a matter of law and make an independent determination.

Under the circumstances of this case, we agree that a duty to disclose existed. Like windows, interior doors located within a property are customarily included with a real estate purchase. Their inclusion is assumed, and one would not expect a purchase agreement to explicitly state that they are included. Thus, if the seller did not intend to include the doors—contrary to ordinary experience—that information should have been disclosed.

[14,15] The seller responds that the buyers' reliance was not justified. Justifiable reliance must be decided on a case-by-case basis.[19] Where ordinary prudence would have prevented the deception, an action for the fraud perpetrated by such deception will not lie.[20] Here, the buyers inspected the property, both before and after the dental practice had relocated. At the time of the second inspection, the dental equipment had been removed but the doors remained. It would not be obvious to anyone that the doors would be removed later. At that point, the building's appearance conveyed the message that the trade fixtures had been removed and all that remained was property included in the sale. From that time forward, the seller had the duty to disclose its intention to remove the interior doors.

---

[17] *Id.*, § 551(2)(b) at 119.

[18] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, *supra* note 14. See, also, Restatement, *supra* note 15, comment *m*.

[19] *Lucky 7 v. THT Realty*, 278 Neb. 997, 775 N.W.2d 671 (2009).

[20] *Bibow v. Gerrard*, 209 Neb. 10, 306 N.W.2d 148 (1981).

We conclude that the evidence in this case supports the county court's conclusion that the buyers reasonably relied on the misrepresentation. Thus, the doctrine of merger did not prevent the seller from being liable for its misrepresentation.

### Fixture or Trade Fixture?

[16,17] The principal question in this appeal is whether the doors were fixtures or trade fixtures. Fixtures are usually thought of as personal property which has become a part of the real estate, but a trade fixture is defined as personalty.[21] Trade fixtures are articles annexed to the realty by a tenant for the purpose of carrying on trade and are ordinarily removable by him during his term.[22]

The seller asserts that the county court erred in relying upon a definition of a trade fixture found within Nebraska's revenue and taxation statutes.[23] Section 77-105 states in pertinent part, "The term tangible personal property also includes trade fixtures, which means machinery and equipment, regardless of the degree of attachment to real property, used directly in commercial, manufacturing, or processing activities conducted on real property, regardless of whether the real property is owned or leased." While this description may have some utility as persuasive authority, the more sound approach is to look to the common law and the test developed thereunder.

Determining whether an item is a fixture or a trade fixture can be a difficult task. "[W]hile the general principles applicable to the question of trade fixtures are well settled, the courts have experienced much difficulty in applying them to variant fact situations, and as a result, it may be said that what constitutes a 'trade fixture' depends on the facts of the particular case."[24]

[18] Long ago, we set forth a test to assist in the determination of whether an article annexed to real estate has become a part of the real estate. In determining the question, a court

---

[21] See *Frost v. Schinkel*, 121 Neb. 784, 238 N.W. 659 (1931).

[22] *Id*.

[23] See § 77-105.

[24] 36A C.J.S. *Fixtures* § 37 at 316 (2014).

should consider (1) actual annexation to the realty or something appurtenant thereto; (2) appropriation to the use or purpose of that part of the realty with which it is connected; and (3) the intention of the party making the annexation to make the article a permanent accession to the freehold, said intention being inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.[25]

[19] We apply the three-part test to resolve the question. First, the doors were attached to doorframes, which were then affixed to the building. We have previously stated that doors are a part of the real estate, even though they are often hung but not fastened to a building.[26] Second, the doors were reasonably necessary for the purposes for which the real estate was being used—they served to divide the interior of the building and to enclose rooms, supplying privacy.

> The second part of the test focuses on whether a chattel is specific to the type of business conducted on realty, or on whether it is the type of property that would generally be found on realty and that would have utility to a hypothetical purchaser of the underlying realty.[27]

The parties stipulated that fire doors were required in the building under a building code applicable to new health care occupancies, but doors are not specific to a dental practice and are the type of property that would be useful to any purchaser of the realty. Third, permissible inferences support a conclusion favorable to the buyers as to the former tenant's intent. The record establishes that the former tenant, owned and operated by the seller's wife, had the doors installed in a building owned by the seller. Given this relationship between tenant and landlord, the county court could reasonably infer that the former tenant intended to make the doors a permanent part of the real estate. We agree with the courts below that the

---

[25] See *Swift Lumber & Fuel Co. v. Elwanger, supra* note 7.

[26] *Frost v. Schinkel, supra* note 21.

[27] 35A Am. Jur. 2d *Fixtures* § 34 at 708 (2010).

doors were fixtures rather than trade fixtures. Consequently, the law did not permit the former tenant to remove them.

[20] It is incumbent on the court to define a fixture, but whether an article of property is a fixture in a particular instance depends upon the facts of that case.[28] And under the facts of this case, we conclude the county court's determination that the doors were not trade fixtures conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

DAMAGES

The county court based its award of damages on the cost to replace the doors. The seller makes two primary arguments related to the county court's determination and award of damages.

First, the seller argues that the county court erred in failing to use the proper formula for damages. The seller suggests that the proper measure of damages is the difference between the value of the property conveyed and the value of the property if it had been as represented.[29] The seller also directs us to a Nebraska jury instruction indicating that the measure of damages for breach or misrepresentation in a contract for sale of property is the lesser of the reasonable cost of placing the property in the condition warranted or the value the property would have had were it in the condition it had been warranted to be in, minus its actual value.[30]

[21,22] The rule that the measure of damages for fixtures is the difference in value of the real property before and after the removal of the articles is not an exclusive rule.[31] "The primary object is to determine the amount of the loss. Whatever rule is best suited to that determination should be followed. The recovery must be reasonable having its basis in a proper consideration of all relevant facts."[32] Fixtures ordinarily have a value

---

[28] See *Hurst v. Furniture Company*, 95 S.C. 221, 78 S.E. 960 (1913).

[29] See *Bibow v. Gerrard, supra* note 20.

[30] See NJI2d Civ. 4.49.

[31] *Joiner v. Pound*, 149 Neb. 321, 31 N.W.2d 100 (1948).

[32] *Id*. at 327, 31 N.W.2d at 104.

separate and apart from the realty to which they are attached. That value may properly be submitted to the fact finder to enable it to more accurately determine the loss suffered by the purchaser.[33] "The replacement cost may more accurately reflect the loss than opinion evidence as to the difference in value of the real estate before and after the removal."[34] Here, there was no damage to the building itself caused by removal of the doors. The cost of replacing the property appears to be a more appropriate measure of damages under the circumstances. We find no error in the court's use of the cost of replacement doors and doorknobs.

Second, the seller argues that the county court erred in failing to give appropriate weight to the opinion of the seller's expert. Determining the weight that should be given expert testimony is uniquely the province of the fact finder.[35] It appears that the county court gave little weight to the testimony of the seller's expert, and we find no error in that regard.

### EVIDENTIARY ISSUES

The seller also argues that the county court abused its discretion in two evidentiary rulings. First, it argues that the court improperly allowed testimony regarding the cost of replacement doors that were residential, and not commercial, fire-rated doors. Second, it contends that an exhibit should not have been received. We find no merit in either argument.

[23] As we have already noted, we review the trial court's relevancy determinations for abuse of discretion. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[36]

[24,25] The testimony regarding the cost of residential doors had at least a minimal relationship to the replacement cost of commercial, fire-rated doors. The seller claims that because

---

[33] See *Joiner v. Pound, supra* note 31.

[34] *Id*. at 327, 31 N.W.2d at 104.

[35] *Cingle v. State*, 277 Neb. 957, 766 N.W.2d 381 (2009).

[36] *ConAgra Foods v. Zimmerman*, 288 Neb. 81, 846 N.W.2d 223 (2014).

the removed doors were commercial, fire-rated doors, testimony regarding the value of residential doors was irrelevant. For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence.[37] As we have already observed, replacement cost was a proper consideration in assessing damages. According to the testimony, the commercial doors were heavier and were fire rated. The residential doors weighed less and were not fire rated. The county court, as the finder of fact, was certainly not required to accept this testimony as conclusive. But the testimony had at least a minimal bearing on the amount of the loss. The court had before it different opinions as to the question of damages and was informed about the difference between the replacement doors and the doors actually removed. Nonetheless, the court accepted testimony of one of the buyers as to damages. The weight to be given a witness' testimony is a question for the trier of fact.[38] We cannot say that the court abused its discretion in admitting this evidence.

The seller also maintains that the lumber company's manager "was not qualified or noticed as an expert,"[39] that he based his testimony as to the value of the doors upon hearsay and had never viewed the doors, and that the court abused its discretion in receiving into evidence the witness' estimate.

[26] Even assuming, without deciding, that the county court abused its discretion in receiving this testimony and exhibit, there is no reversible error. The erroneous admission of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence.[40] The county

---

[37] Id.

[38] See Werner v. County of Platte, 284 Neb. 899, 824 N.W.2d 38 (2012).

[39] Brief for appellant at 15.

[40] In re Estate of Mousel, 271 Neb. 628, 715 N.W.2d 490 (2006).

court computed damages based on testimony of one of the buyers regarding the cost paid for replacement doors. Because there is no indication that the court relied upon the other witness' testimony or estimate, any error in the court's decision to receive such evidence was harmless.

## CONCLUSION

We conclude that the doctrine of merger was inapplicable, because the seller had a duty to disclose that the interior doors would be removed and the seller's nondisclosure amounted to a misrepresentation. We further conclude that the doors were fixtures rather than trade fixtures and, thus, were not removable by the former tenant. Because the county court's award of damages is supported by competent evidence, we affirm the decision of the district court affirming the county court's judgment.

AFFIRMED.

---

STATE OF NEBRASKA, APPELLEE, V.
JAMES BRANCH, APPELLANT.
___ N.W.2d ___

Filed March 27, 2015.    No. S-14-711.

1. **Postconviction: Proof: Appeal and Error.** A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.
2. **Postconviction: Evidence: Witnesses.** In an evidentiary hearing for postconviction relief, the postconviction trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including witness credibility and the weight to be given a witness' testimony.
3. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.
4. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.