METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION, APPELLEE, V. LAWRENCE C. REEVES ET AL., APPELLEES, PRODUCTION SALES CO., A NEBRASKA CORPORATION, APPELLANT.

389 N.W.2d 295

Filed June 27, 1986.   No: 85-129.

David M. Geier of Bauer, Galter, Geier, Flowers & O'Brien, for appellant.

Arend R. Baack of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee Metropolitan Life.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

In this foreclosure action the district court found that a grain storage facility erected by defendant-appellant, Production Sales Co., on land then owned by the buyers, defendants-appellees Lawrence C. and Donna J. Reeves and Philip R. and June L. Gustafson, became a fixture subject to the first and second liens of the real estate mortgagees, plaintiff-appellee Metropolitan Life Insurance Company, a

corporation, and defendant-appellee Comag Credit Corporation, and ruled accordingly. Production Sales assigns that finding and the ruling based thereon as error. We reverse and remand with direction.

The facility hereinafter described was contracted for and erected after the subject mortgages came into being and were filed. Thus, none of the proceeds of the mortgages were used in connection with the facility, which cost $171,185.30.

The facility consists of a number of steel structures bolted onto concrete slabs which are partially embedded into the ground, and includes 50 to 60 feet of underground tubing through which air is electronically pumped in order to move grain from the dryer to either of two storage bins. Most of the structures were transported to the site in a disassembled state, assembled with numerous bolts (over 1,000 of them in each of the two storage bins), lifted into the air, and then placed and bolted onto the slabs. Disassembly and removal of the steel structures would require a period of over 2 weeks.

Although the site was taxed as realty and the buyers stated they intended that the facility remain in place more than a season, the purchase agreement between Production Sales and the buyers provides that the facility not become a part of the realty until paid for in full. The buyers paid but $16,137.77 of the purchase price.

Neb. U.C.C. § 9-313(7) (Reissue 1980) provides that unless brought within certain enumerated exceptions, "a security interest in fixtures is subordinate to the conflicting interest of an encumbrancer or owner of the related real estate who is not the debtor." Section 9-313(1)(a) provides that "goods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law." There is no claim that the facility, if a fixture, was brought within any of the exceptions enumerated in § 9-313 such as to give Production Sales priority over the real estate mortgagees. No error has been assigned to the trial court's findings that Production Sales failed to make the "fixture filing" permitted by § 9-313(1)(b) and that it had no perfected security interest in the facility.

The threshold question, then, is whether the facility is, as the trial court found, or is not a fixture. Once that question is

resolved, § 9-313 dictates the result. If the facility is a fixture, the interest of Production Sales is subordinate to the liens of the mortgagees; if it is not a fixture, the interest of Production Sales never became subject to the mortgages and, thus, is free of the liens they create.

Three main factors determine whether an article, or combination of articles, is a fixture. They are (1) whether the article or articles are actually annexed to the realty, or something appurtenant thereto; (2) whether the article or articles have been appropriated to the use or purpose of that part of the realty with which it is or they are connected; and (3) whether the party making the annexation intended to make the article or articles a permanent accession to the freehold. *Fuel Exploration, Inc. v. Novotny*, 221 Neb. 17, 374 N.W.2d 838 (1985); *Bank of Valley v. U.S. Nat. Bank*, 215 Neb. 912, 341 N.W.2d 592 (1983); *T-V Transmission v. County Bd. of Equal.*, 215 Neb. 363, 338 N.W.2d 752 (1983); *Bankers Life Ins. Co. v. Ohrt*, 131 Neb. 858, 270 N.W. 497 (1936).

As noted in *Bank of Valley v. U.S. Nat. Bank, supra*, and *Cook v. Beermann*, 201 Neb. 675, 271 N.W.2d 459 (1978), *modified on other grounds* 202 Neb. 447, 276 N.W.2d 84 (1979), the third factor, the intention of the annexing party to make the article or articles a permanent accession to the realty, is the factor which is typically given the most weight. *Bank of Valley* relied on the provisions of a land lease in holding that, for the purpose of establishing where a security interest granted by the lessee to a third party should be filed, a house built on the leased land was not a fixture.

It is true, as Metropolitan Life points out, that *Tillotson v. Stephens*, 195 Neb. 104, 237 N.W.2d 108 (1975), in holding that a mortgage took priority over an improperly filed security interest in a steel grain-drying bin, states that as a general proposition special agreements fixing the status of property as realty or personalty are binding only on the contracting parties and their privies, and are not binding on third parties who do not have notice of the agreement. However, in *Tillotson* the mortgage came into being after the bin had been erected. That is a significant distinction, for when the mortgagees in the present case made their loans, they could not have taken into account

the value the facility added to the realty.

That basic distinction was recognized in *Swift Lumber & Fuel Co. v. Elwanger*, 127 Neb. 740, 256 N.W. 875 (1934). The *Elwanger* court noted that when the rights of third parties are not adversely affected, and unless otherwise controlled by statute or unless the articles were so completely merged with the realty as to prevent their removal without material injury to the latter, courts generally will uphold the characterization put upon the property by parties to a purchase contract. Thus, while assuming that as to innocent third parties, a boiler, burner, and tank would be classified as fixtures, the court nonetheless held that the rights of the seller of the equipment under a conditional sales contract were superior to those of the prior vendor of the real estate under an executory contract of sale; however, the real estate vendor's rights in refrigeration equipment upon which she relied in making monetary advancements to the vendee of the real estate were superior to those of the equipment seller.

We conclude, therefore, that under the circumstances the provision of the purchase agreement, that the facility not become a part of the realty until after full payment, is to be enforced. Since full payment had not been made, the facility did not become a fixture.

The decree of the trial court is reversed and the matter remanded for the entry of a decree consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTION.