JULIE LINDSTROM, Plaintiff-Appellant, v. ANDREW HOUZENGA *et al.*,
Defendants-Appellees (Elmer Hans *et al.*, Plaintiffs).

Second District   No. 2—88—0228

Opinion filed December 8, 1988.

H. Kent Heller and Christopher J. Stull, both of H. Heller & Associates, of Naperville, and Julie Lindstrom, of Harlan Heller, Ltd., of Mattoon, for appellant.

Lawrence L. Bruckner, of Savanna (John A. Leemon, of counsel), for appellee Federal Land Bank of St. Louis.

John F. Mitchell, of Mount Carroll, for appellee Andrew Houzenga.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Julie Lindstrom (Lindstrom), appeals from an order of the circuit court of Carroll County granting defendants' motion for summary judgment. Plaintiffs Lindstrom, Elmer Hans (Lindstrom's father), and Terry and Ronald Hans (Lindstrom's brothers), sought a declaratory judgment as to whether certain grain bins and related equipment were fixtures or personalty. Only Lindstrom is pursuing this appeal.

On or about August 15, 1977, Elmer Hans (Elmer) and his wife, Arletta, executed a mortgage on their farm to the Federal Land Bank of St. Louis (Bank). In or about 1986, the Bank foreclosed on this real property, upon which the subject grain bins are located. Subsequent to this foreclosure, Lindstrom agreed to lease the farmland from August 15, 1986, to December 31, 1986, for $4,000. In or about early 1987, the Bank sold said property to defendant Andrew Houzenga.

On April 21, 1987, Elmer executed a contract with Lindstrom to sell her four grain bins and four augers (mechanical devices by which grain is moved from one bin to another). Defendants claimed title to the grain bins by virtue of the aforesaid mortgage and foreclosure. Plaintiffs claimed title to the grain bins, alleging these were personal property. Defendants moved for summary judgment. Plaintiffs Elmer,

Ronald, and Terry Hans also moved for summary judgment. Plaintiff Lindstrom did not move for summary judgment, believing that there were material factual issues to be tried.

The question before us is whether the trial court erred in granting defendants' motion for summary judgment.

■ It is axiomatic that the function of this court in reviewing a grant of summary judgment is limited to the determination of whether the trial court correctly ruled that no genuine issue of material fact has been raised, and if none was raised, whether the judgment, as a matter of law, was correctly entered. (*Kelman v. University of Chicago* (1988), 166 Ill. App. 3d 137.) Thus, our initial task is to determine from the pleadings, affidavits, and other relevant documents if there is any dispute as to a material fact.

■ Before addressing this issue, we note that the accepted test for determining whether an article or structure attached to the land is to be regarded as a fixture is: (1) the real or constructed annexation of the article or structure to the realty or something appurtenant thereto; (2) the appropriation or adaptation of the article or structure to the use or purpose to which that part of the realty with which the article or structure is connected is appropriated; and (3) the intention of the person making the annexation to make the article or structure a permanent accession to the freehold. (*Hacker v. B. Munroe & Son* (1898), 176 Ill. 384.) Over the years, the courts have recognized that the question of intent is the preeminent element of this test. In the cases of doubt, great weight must be given to the actual or presumed intention of the parties in placing the articles claimed as fixtures. *Thuma v. Granada Hotel Corp.* (1933), 269 Ill. App. 484.

■ Plaintiff initially asserts that Elmer regarded the grain bins as personal property. In 1977 and again in 1983, Elmer had granted a security interest in the grain bins to Commodity Credit Corporation (Commodity). Plaintiff contends that pursuant to these agreements with Commodity, the grain bins were intended to be personal property and that said agreements whereby they were secured are properly referred to as chattel mortgages. Plaintiff cites *Landfield Finance Co. v. Feinerman* (1972), 3 Ill. App. 3d 487, wherein it was found that a chattel mortgage and acceptance thereof in property has been found to express very strong evidence of intent that such items are to remain personalty rather than to be considered as part of the real estate. Plaintiff contends there is an issue of fact regarding Elmer's intention *vis-a-vis* the subject grain bins. We agree. Under *Landfield*, Elmer's use of the bins to secure chattel mortgages indicates an intention to treat them as personal property, an intention which a trier

of fact should determine.

Further, noting there are no Illinois State cases specifically dealing with grain bins as personalty or fixtures, plaintiff cites cases from other jurisdictions. In these cases, the manner in which the bins have been attached to the real estate has played a major role in determining if they are personalty or fixtures.

In *Metropolitan Life Insurance Co. v. Reeves* (1986), 223 Neb. 299, 389 N.W.2d 295, the supreme court of Nebraska applied the three-prong test espoused in *Hacker v. Munroe* (1898), 176 Ill. 384. The grain bins in *Metropolitan Life* were corrugated steel structures bolted into concrete slabs, which were partially imbedded into the ground. In addition, 50 to 60 feet of tubing connecting the grain bins was laid underground, through which the grain was transferred from bin to bin. The grain bins were transported to the farm disassembled, were assembled with bolts on the site, and placed on the slabs and bolted thereto. The court found that if the grain bins could be assembled on site, they could just as easily be disassembled on site. Thus, it held that the bins were personal property. The court further held that a grain-bin structure, which is capable of being easily disassembled, does not become a fixture merely by virtue of the fact it is bolted to a concrete slab which is poured onto the ground. Plaintiff maintains that the *Metropolitan Life* case strongly parallels the case at bar. She points out that in both instances, the bins are made of corrugated metal and are capable of being readily disassembled. Both are placed upon concrete pads and bolted thereto.

Plaintiff further contends that the court should note one important difference which does exist between the *Metropolitan* case and the case at bar. In the *Metropolitan* case, the auger equipment which was used to connect the two grain bins in question was subterranean. Thus, the *Metropolitan* bins could arguably be seen as having a stronger attachment to realty. In the case at bar, the flighting assemblies, by which the grain is transferred from one bin to another, are all mounted on top of the grain bins. These flighting assemblies are not attached by any means whatsoever to realty, and, therefore, the grain bins in the present case have even less of an attachment to realty than the grain bins in the *Metropolitan* case.

In *Harry J. Whelchel Co. v. King* (Tenn. 1980), 610 S.W.2d 710, the Tennessee Supreme Court held that grain bins are personal property. The facts which guided the supreme court of Tennessee in reaching its decision were that the bins in question rested upon a concrete base and were not built into the realty. There was undisputed proof that the subject grain bins could be disassembled and hauled away at

less expense and in less time than was required initially to erect them. This was done without any serious injury to the freehold.

The *Whelchel* court observed that the concrete base upon which the grain bins sat would be left behind if the grain bin was moved. However, the owner of the freehold would be able to remove the concrete base by breaking up the concrete with a bulldozer and having it hauled away in a matter of hours. There was also evidence presented that a subsequent owner of the freehold could choose to erect similar grain bins on a concrete pad that would be left behind.

Moreover, the *Whelchel* court held that the metal sheets and panels from which a grain bin is assembled and bolted together are not injured by the assembly process and subsequent disassembly, and it would be more economical to disassemble, move, and reassemble a used grain bin than it would be to purchase a new grain bin at a different location.

The *Whelchel* grain bins merely rested upon the concrete base. The court found that the attachment by nuts and bolts allowed the metal grain bin to be removed in a matter of minutes. The court determined from the evidence that such attachment is solely for the purpose of keeping the large grain bins from blowing over in high wind when empty. The court concluded that the attachment was not intended for the purpose of affixing the grain bins to the realty. For, when the grain bins were at least partially filled, such attachment no longer was necessary, as the weight of the stored grain would keep the grain bin in place even in a high wind.

An affidavit sworn to by plaintiff Ronald Hans (Ronald) states that the affiant has been employed on a farm or farm-related business for roughly two decades. He states that he is very familiar with the types of bins at issue and that such bins can be readily moved. Ronald maintains that the disputed bins are fastened to concrete slabs with bolts. Ronald next contends that it is not uncommon for bins similar to said bins to be moved and that larger bins are readily moved on the back of trucks, without disassembly. Finally, he states that larger bins than the ones at issue are commonly bolted in place and secured in no other way.

Plaintiffs also submitted photographs of the bins, specifically showing how they are secured. Defendants brought forward no evidence to rebut the affidavits or photographs.

■ Ronald's affidavit and the photographs bring into question the issue of Elmer's intention regarding the bins. The apparent ease by which the bins are moved and the fact that they are merely bolted to, rather than embedded in, concrete slabs bring into question Elmer's

intentions as to whether they are personalty or fixtures. This is a material factual issue which should be determined by the trier of fact.

Thus, we find that there are at least two material issues of fact related to Elmer's intention regarding the grain bins for a trier of fact to determine.

Accordingly, we reverse the summary judgment granted by the circuit court and remand this case for proceedings consistent with this opinion.

Reversed and remanded.

NASH and DUNN, JJ., concur.