THE FEDERAL LAND BANK OF OMAHA, APPELLANT, V. JERALD E. SWANSON AND PAMELA A. SWANSON, HUSBAND AND WIFE, ET AL., APPELLEES.

438 N.W.2d 765

Filed April 21, 1989.    No. 87-844.

John W. Ballew, Jr., of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, P.C., for appellant.

Thomas M. Sonntag, of John Peetz, P.C., for appellee Arlington State Bank.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and RIST, D.J.

WHITE, J.

This case arose from a dispute between two banks over the possession of two grain bins and their accompanying accessories. On April 8, 1983, codefendants Jerald E. and Pamela A. Swanson gave a note and mortgage on their land located 6 miles west of Gurley, Nebraska, to the plaintiff-appellant, The Federal Land Bank of Omaha. In September 1983, the Swansons acquired a loan from codefendant-appellee Arlington State Bank for the purchase of two grain bins and accessories. The loan from the appellee bank was evidenced by a promissory note and a financing and security agreement signed by Jerald Swanson.

Sometime in 1986, the Swansons, who are not involved in

this appeal, defaulted and voluntarily surrendered the real estate to the appellant. Appellee bank initiated a replevin action in order to obtain possession of the two grain bins and accessories. After securing an order in replevin, the appellee bank attempted to arrange an auction to sell the grain bins.

On November 5, 1986, appellant applied for and received a temporary restraining order from the district court for Cheyenne County enjoining the appellee bank from selling the grain bins and accessories. Appellee bank filed an answer and counterclaim for damages on March 23, 1987.

A hearing for a permanent injunction was held, and on July 27, 1987, the district court entered an order dissolving the temporary injunction and awarded possession of the grain bins and accessories to the appellee bank pursuant to the order of replevin. The district court found that the grain bins were the personal property of the Swansons and were not fixtures. A hearing on the issue of damages was reserved for a later date.

The Federal Land Bank appeals from the district court's July 27 order, alleging that the court erred in (1) finding that the grain bins and accessories were personal property; (2) failing to enter a permanent injunction enjoining appellee bank from selling the grain bins and accessories; and (3) allowing appellee bank to have possession of the grain bins and accessories in light of its defective security interest in the grain bins and accessories.

An action for injunction sounds in equity. *Selection Research, Inc. v. Murman*, 230 Neb. 786, 433 N.W.2d 526 (1989).

> In an appeal of such an action, this court tries the factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. . . . In its de novo review of the record of this case, this court is guided by the rule that a party seeking injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief.

(Citations omitted.) *Id.* at 795, 433 N.W.2d at 531-32.

The appellant's claim to the grain bins and accessories necessarily arises from its interest in the Swansons' real estate pursuant to the April 1983 mortgage. The appellee bank contends the grain bins and accessories are personalty in which it has a valid security interest because of the promissory note and financing and security agreement. Hence, the threshold question is whether the grain bins are, as the district court found, personalty.

In *Metropolitan Life Ins. Co. v. Reeves*, 223 Neb. 299, 389 N.W.2d 295 (1986), this court said:

> Three main factors determine whether an article, or combination of articles, is a fixture. They are (1) whether the article or articles are actually annexed to the realty, or something appurtenant thereto; (2) whether the article or articles have been appropriated to the use or purpose of that part of the realty with which it is or they are connected; and (3) whether the party making the annexation intended to make the article or articles a permanent accession to the freehold. . . .
>
> . . . [T]he third factor, the intention of the annexing party to make the article or articles a permanent accession to the realty, is the factor which is typically given the most weight.

(Citations omitted.) *Id.* at 301, 389 N.W.2d at 296-97. In our de novo review of the record, we address each factor.

With respect to the first factor, the evidence shows that the disputed bins are utilized for drying and storing grain. One bin is a 30-foot-diameter eight-ring bin with a 14,000-bushel capacity, and the other is a 24-foot-diameter seven-ring bin with a 6,000-bushel capacity. The bins are provided with several accessories for drying and moving the grain, such as drying fans, heaters, and augers. Each bin sits on a concrete slab. On the bottom ring of each bin is an angle ring which lies flush on top of the concrete slab. Clips, which are not part of the bin structure, are placed over the lip of the angle ring and are attached to bolts protruding from the concrete slab around the outside of the bin. The clips are adjustable and can easily be slid off the lip of the angle ring, allowing removal of the bin. The

contractor, Isadore Stoetzel, whose company erected the bins, testified that the bins were designed to sit on top of the concrete and that the purpose of the clip anchoring system was to prevent the bin from blowing away in the wind. Though Stoetzel has never moved this particular type of grain bin before, he has moved several bins similar to the ones in dispute. Stoetzel stated that on one occasion it took him only 4 hours to move two larger, 36-foot-diameter bins. On cross-examination, the following testimony occurred:

Q. Did you ever discuss with [Jerald Swanson] whether [the bins] were ever going to be moved or not?

A. He asked me if they could be moved prior to signing the contract.

Q. And you told him —

A. I told him basically what I am telling you, that they can be moved.

The evidence also demonstrates that the accessories are items which are either attached to the grain bins or are readily movable. Accordingly, we find that the grain bins and accessories are not annexed to the real estate, and for the remainder of this opinion we treat the accessories as part of the grain bins.

The evidence going to the second factor, whether the grain bins have been appropriated to the use or purpose of that part of the realty with which they are connected, showed that Jerald Swanson used the bins to store crops raised on the surrounding land. However, on one occasion he did store some of his neighbor's grain for a short period of time.

Though finding that the evidence satisfies the second factor, as stated above, the third factor, regarding the intent of the annexing party, is given the most weight. *Metropolitan Life Ins. Co. v. Reeves, supra.* We note that the evidence shows that Jerald Swanson purchased the grain bins in August of 1983, approximately 5 months after the mortgage was executed. The loan from the appellee bank was used exclusively for the purchase and erection of the two bins. During a deposition, Jerald Swanson testified as follows:

Q. . . . . [W]ere you giving something to the [appellee] bank when you signed [the financing statement and

security agreement]?

A. Well, you were giving an agreement that you were going to pay them back, I guess, for the property that they had. I guess they had the right to it until you paid it off.

Q. And the property that you are referring to then would be what?

A. My personal property which, you know.

Q. Would that include the grain bins?

A. Right, yes.

. . . .

Q. So if you did not pay off the loan, it was your intention that the bank would be entitled to the grain bins?

A. Yes.

In addition, every year appellee bank required a property statement from Jerald Swanson. On the 1984 statement, Jerald Swanson listed the grain bins as farm equipment and noted that appellee bank held a lien on the bins. Based on the foregoing, it is clear that Jerald Swanson's intention was that the bins were his personal property subject to a lien held by the appellee bank. He never intended the grain bins to be fixtures. Thus, we find that the evidence clearly establishes that the grain bins were personal property and not fixtures. The appellant failed to establish by a preponderance of the evidence each factor to support its claim to relief.

Because of our finding, it is not necessary to address appellant's other assignments of error except to note, with regard to its third assignment of error, that appellant cannot claim a superior interest in the grain bins on the alleged weakness of appellee bank's failure to perfect its security interest. See *Mack v. Luebben*, 215 Neb. 832, 341 N.W.2d 335 (1983).

Accordingly, the judgment of the district court for Cheyenne County is affirmed.

AFFIRMED.