**STATE of Iowa, Appellee,**

v.

**Mary Jane WIEDERIEN, Appellant.**

No. 04–0815.

Supreme Court of Iowa.

Feb. 3, 2006.

Christopher Kragnes, Sr., and Tiffany Koenig of Kragnes, Tingle & Koenig, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kristin Guddall, Assistant Attorney General, Wayne Reisetter, County Attorney, and Stacy Ritchie, Assistant County Attorney, for appellee.

WIGGINS, Justice.

The State charged the defendant with harassment under Iowa Code section 708.7(4) (2003). At the initial appearance, the court issued a no-contact order requiring the defendant not to have contact with the alleged victim. The district court acquitted the defendant of the charge but continued the no-contact order pursuant to section 708.12(2). Because we find the court does not have the authority to extend a no-contact order under section 708.12(2) after an acquittal, we reverse the judgment of the district court and remand the case for the court to issue judgment consistent with this opinion.

## I. Background Facts and Proceedings.

The State charged Mary Jane Wiederien with harassment in the third degree under Iowa Code section 708.7(4). The alleged harassment involved her conduct towards her physician. The affidavit attached to the complaint alleged Wiederien contacted her physician's office via mail and fax,

appeared to be following her physician, and filed a complaint against her physician with the Iowa Board of Medical Examiners. At Wiederien's initial appearance, the magistrate issued a no-contact order under section 708.12(1) ordering Wiederien to have no contact with her physician.

After a bench trial, the magistrate found Wiederien not guilty of harassment in the third degree due to the State's failure to prove intent to harass. Even though the magistrate found Wiederien not guilty of the criminal charge, he found Wiederien's physician "had a legitimate right to feel nervous and afraid," and continued the no-contact order for two years from the original issue date, with a limited exception allowing Wiederien to visit her physician's neighbors.

Wiederien appealed the magistrate's continuation of the no-contact order to the district court, claiming the magistrate could not continue the no-contact order upon a finding of not guilty. The district court affirmed the magistrate's decision. Wiederien appeals.

## II. Issue.

■ Wiederien claims "[w]hen a defendant is found not guilty, the court's jurisdiction ends; therefore, the court no longer has the authority to continue a no contact order." We distinguish the court's lack of subject matter jurisdiction from the court's lack of authority to hear a case. *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989). "A constitution or a legislative enactment confers subject matter jurisdiction on the courts." *In re Estate of Falck*, 672 N.W.2d 785, 789 (Iowa 2003). The Iowa Code gives the district court subject matter jurisdiction to enter a no-contact order against a defendant who is prosecuted for harassment. Iowa Code § 708.12(1)-(2).

■ " '[L]ack of authority to hear [a] particular case,' " also referred to as "lack of jurisdiction of the case," occurs when the court has subject matter jurisdiction but may not be able to act in a particular case for some reason. *Christie*, 448 N.W.2d at 450. The crux of Wiederien's appeal is that section 708.12(2) did not give the magistrate authority to continue a no-contact order after the court acquits the defendant of the underlying harassment charge. Consequently, we will determine whether the magistrate had the *authority* to continue the no-contact order after he acquitted Wiederien on the charge of harassment.

## III. Scope of Review.

■ We must interpret Iowa Code section 708.12 to determine whether the district court has the authority to continue a no-contact order after it acquits a defendant on the underlying harassment charge. Because Wiederien's appeal raises a question of statutory interpretation, our review is for correction of errors at law. *State v. Wolford Corp.*, 689 N.W.2d 471, 473 (Iowa 2004).

## IV. Analysis.

■ The Code provides:

When a person arrested for harassment in violation of section 708.7 ... is brought before a magistrate for initial appearance ... and the magistrate finds probable cause to believe that a violation of section 708.7 ... has occurred and that the presence of or contact with the defendant poses a threat to the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's immediate family, the magistrate shall enter an order which shall require the defendant to have no contact with the alleged victim, persons residing with the alleged victim, or members of the alleged victim's immediate family, and to refrain from harassing

the alleged victim, persons residing with the alleged victim, or members of the alleged victim's immediate family, in addition to any other conditions of release determined and imposed by the magistrate under section 811.2.

Iowa Code § 708.12(1). The Code further provides:

The order has force and effect until it is modified or terminated by subsequent court action in a contempt proceeding or the criminal or juvenile court action and is reviewable in the manner prescribed in section 811.2. *Upon final disposition of the criminal or juvenile court action, the court shall make a determination whether the no-contact order should be modified or terminated. If a defendant is convicted for, receives a deferred judgment for, or pleads guilty to a violation of section 708.7 ... the court shall modify the no-contact order issued by the magistrate to provide that the no-contact order shall continue in effect for a period of five years from the date that the judgment is entered or the deferred judgment is granted, regardless of whether the defendant is placed on probation.*

*Id.* § 708.12(2) (emphasis added).

When confronted with the task of statutory interpretation, we have stated:

The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute.

*Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted).

We resort to "the rules of statutory construction *only* when the terms of [a] statute are ambiguous." *IBP, Inc. v. Harker,* 633 N.W.2d 322, 325 (Iowa 2001). If reasonable persons can disagree on a statute's meaning, it is ambiguous. *State v. Ahitow,* 544 N.W.2d 270, 272 (Iowa 1996). "Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined." *Holiday Inns Franchising, Inc. v. Branstad,* 537 N.W.2d 724, 728 (Iowa 1995).

Section 708.12 is ambiguous because it is susceptible to two meanings. We could interpret the word "disposition" in section 708.12(2) to encompass an acquittal; in such a case, the court would have the authority to extend the no-contact order upon Wiederien's acquittal. An alternative interpretation could be made based on the language in section 708.12(2), which specifically sets forth a framework to continue the no-contact order when a defendant's guilt is established but fails to provide any framework when the defendant is acquitted. This language could evidence a legislative intent that the court does not have the authority to continue the no-contact order when it acquits the defendant. In this instance, we could conclude the legislature used the word "disposition" to encompass a finding of delinquency in a juvenile court action as well as a conviction in a criminal proceeding.

When we find an ambiguity, we have stated:

To resolve the ambiguity and ultimately determine legislative intent, we consider (1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be

remedied; and (4) a reasonable construction that will effectuate the statute's purpose rather than one that will defeat it.

*State v. Green,* 470 N.W.2d 15, 18 (Iowa 1991). We do not interpret a statute so broadly that our interpretation "threaten[s] the constitutional due process prohibitions against vagueness and uncertainty." *State v. Pace,* 602 N.W.2d 764, 771 (Iowa 1999).

 The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits vague statutes. *State v. Reed,* 618 N.W.2d 327, 332 (Iowa 2000). A statute is void for vagueness if it lacks clearly defined prohibitions. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972). The values protected by the void-for-vagueness doctrine are:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."

*Id.* at 108–09, 92 S.Ct. at 2298–99, 33 L.Ed.2d at 227–28 (alterations in original) (citations omitted).

Section 708.12(2) provides the court with the authority to extend a no-contact order "[i]f a defendant is convicted for, receives a deferred judgment for, or pleads guilty to a violation of section 708.7." This language clearly informs the court and the defendant under what circumstances the court will extend a no-contact order. Section 708.12(2) does not contain any similarly express standards or guidelines as to when the court may extend a no-contact order when the court acquits a defendant.

The magistrate continued the no-contact order because "the victim in this case had a legitimate right to feel nervous and afraid." Nowhere in the statute did the legislature give the magistrate the authority to extend a no-contact order on an acquittal when the victim felt nervous and afraid. The legislature's failure to define the burden of proof and the circumstances in which a court can extend a no-contact order after an acquittal not only fails to give the defendant notice as to when the court will extend the order, but also leads to an arbitrary and discriminatory enforcement of the statute on an ad hoc and subjective basis. Therefore, to avoid an interpretation of section 708.12(2) that jeopardizes the constitutional due process proscriptions against vagueness and uncertainty, we hold section 708.12(2) does not give the court the authority to continue a no-contact order when the defendant is acquitted.

## V. Disposition.

Because we hold Iowa Code section 708.12(2) does not give the court the authority to continue a no-contact order when it acquits a defendant on the harassment charge, we reverse the judgment of the district court and remand the case for

the court to issue judgment consistent with this opinion.

**REVERSED AND CASE REMAND-ED.**

All justices concur except CADY, J., who dissents.

CADY, J. (dissenting).

I respectfully dissent. The majority declares the existence of an ambiguity in the statute based upon two possible interpretations, and concludes we must adopt one interpretation over the other because the other interpretation would render the statute unconstitutional. First, this approach is based on the false premise that the interpretation according to the plain language of the statute would be unconstitutional. Second, as a method of statutory interpretation, it fails to consider other interpretive aids and fails to scrutinize the language of the statute to reveal the intent of our legislature. I believe we are required to interpret this statute as it is written to permit courts to determine the duration of no-contact orders at the conclusion of the underlying criminal case, including those instances when the case concludes with acquittal. The failure to interpret the statute in this manner means it is doomed to fail to achieve its goal of protecting victims of harassment and stalking.

The majority concludes the statute would be unconstitutional if interpreted to permit courts to extend no-contact orders in the event of an acquittal. The majority reasons this interpretation of the statute would violate due process because such a grant of power to the court to continue the no-contact order following an acquittal has no standard to support the adjudication, while the statute is able to utilize the reasonable-doubt standard from the criminal case to support the continuation of no-contact orders in the event of a disposition involving guilt. In other words, the per-

ceived vagueness is overcome by the prior finding of guilt under the reasonable-doubt standard. However, this approach overlooks that no-contact orders under the statute are collateral matters to the underlying criminal proceeding, entered by the court based upon a standard much less exacting than the standard to support guilt in a criminal case. Thus, an acquittal of the underlying criminal charge does not undermine or affect the validity of the prior no-contact order, which is civil in nature and based only upon a determination of probable cause and a need to protect the safety of another. Surely, evidence that does not establish guilt beyond a reasonable doubt and results in an acquittal in a criminal case can support relief in a civil case. *See State v. One Certain Conveyance*, 316 N.W.2d 675, 678 (Iowa 1982) (" 'In criminal actions the burden of proof is "beyond a reasonable doubt," while in civil actions the burden is "proof by a preponderance of the evidence." Therefore, an acquittal in the former action serves to show only that the government did not prove beyond a reasonable doubt that the defendant committed the crime. This does not mean that the more lenient civil burden of preponderance of the evidence could not have been satisfied. Therefore, the government in a subsequent civil action should not be precluded from attempting to prove an issue by a preponderance of the evidence merely because it did not sustain the burden of proof beyond a reasonable doubt.' " (quoting Allan D. Vestal, *Issue Preclusion and Criminal Prosecutions*, 65 Iowa L.Rev. 281, 335 (1980))). Moreover, due process is not offended because the statute fails to specify a specific standard to support the continuance of a no-contact order under one circumstance (acquittal), while it can rely on the criminal burden of proof to support the continuance of a no-contact order under another circumstance (guilt).

We are obligated to presume statutes to be constitutional, and we are further obligated to give them any reasonable construction possible to make them constitutional. *State v. Millsap,* 704 N.W.2d 426, 436 (Iowa 2005); *see also State v. White,* 545 N.W.2d 552, 557 (Iowa 1996) (stating a party claiming a statute is void for vagueness "bears a heavy burden to show the statute 'clearly, palpably, and without a doubt, infringes the constitution'" (citations omitted)); *In re Hochmuth,* 251 N.W.2d 484, 488–89 (Iowa 1977) ("[A] statute otherwise unconstitutional because of vagueness may be salvaged by a limiting interpretation which brings the application of the statute within constitutional bounds."). In this light, it is permissible to draw upon other statutes to clarify how a statute operates in order to save it from attack based on uncertainty. 1A Norman J. Singer, *Statutes and Statutory Construction* § 21.16, at 226–28 (6th ed.2002) [hereinafter Singer]; *accord Merritt v. Council Bluffs Civil Serv. Comm'n,* 458 N.W.2d 867, 869 (Iowa Ct.App.1990) ("[I]f a statute's meaning is fairly ascertainable by reference to . . . similar statutes, . . . then a statute will not be considered unconstitutionally vague." (citing *State v. McKee,* 392 N.W.2d 493, 494 (Iowa 1986); *Williams v. Osmundson,* 281 N.W.2d 622, 625 (Iowa 1979))). This means we may look beyond the statute to determine the standard of proof when it is absent from the statute. *Perez v. Cleveland,* 78 Ohio St.3d 376, 678 N.E.2d 537, 540 (1997) (citation omitted).

In this case, the vagueness claim exists because the statute directs the court to determine if the "no-contact order should be modified or terminated" upon final disposition of the criminal case, but then fails to specify a burden of proof. Iowa Code § 708.12(2). The majority is willing to draw upon the criminal standard when the final disposition is based on guilt to sidestep the statutory uncertainty, but is un-willing to further draw upon the civil standard of a preponderance of the evidence applicable to similar injunctions under the statute governing domestic abuse, as well as injunctions in general. *See id.* § 236.4(1) (imposing preponderance-of-evidence standard in domestic abuse proceedings where relief includes protective orders); *Kennedy v. Oleson,* 251 Iowa 418, 421, 100 N.W.2d 894, 896 (1960) (burden of proof for an injunction is preponderance of evidence); 42 Am.Jur.2d *Injunction* § 265, at 848 (2000) (same). However, under the standards applied to vagueness claims involving statutes pertaining to civil matters, other than First Amendment claims perhaps, we are obligated to read the appropriate standard of proof into the statute to save it from attack. *See MRM, Inc. v. City of Davenport,* 290 N.W.2d 338, 344–45 (Iowa 1980) ("Ordinarily a 'significantly higher' standard of certainty is required when a vagueness challenge is made in the context of a criminal prosecution than in situations involving civil remedies." (citing *Williams,* 281 N.W.2d at 625; *Knight v. Iowa Dist. Ct.,* 269 N.W.2d 430, 432 (Iowa 1978); *State ex rel. Turner v. Koscot Interplanetary, Inc.,* 191 N.W.2d 624, 629 (Iowa 1971))); *accord Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840, 849 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement.").

This means we can safely declare that the preponderance-of-the-evidence standard applies under the statute to guide the court in its statutory obligation "upon final disposition in a criminal or civil action" to "make a determination whether the no-contact order should be modified or terminated." Iowa Code § 708.12(2). Moreover, this preponderance-of-the-evidence standard applies whether the final disposi-

tion is an acquittal or some form of guilt.[1] Thus, under the statute, the court considers the evidence presented in the criminal or juvenile proceeding to decide if the no-contact order should be modified or terminated in accordance with those standards applicable to continuing, modifying, or dissolving other injunctions. *See Uncle B's Bakery, Inc. v. O'Rourke,* 938 F.Supp. 1450, 1459 (N.D.Iowa 1996) (court would not vacate temporary injunction unless there no longer was any threat of harm). The task in this case is not to declare the statute to be unconstitutional but to strive to give it a construction to uphold it, rather than to defeat it.

In addition to its vagueness reasoning, the majority also bases its conclusion on the speculation that the legislature's failure to include a "framework to continue the no-contact order" upon an acquittal "could evidence a legislative intent that the court does not have the authority to continue the no-contact order when it acquits the defendant." The principle of statutory interpretation impliedly relied on by the majority is *expressio unius est exclusio alterius. See Black's Law Dictionary* 1635 (7th ed.1999) (defining the maxim as "[t]he expression of one thing is the exclusion of another"); *accord Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.,* 650 N.W.2d 609, 618 (Iowa 2002) ("Generally, the express mention of one thing in a statute implies the exclusion of others." (citing *Callender v. Skiles,* 591 N.W.2d 182, 186 (Iowa 1999))). It means that when a statute designates its manner of performance and operation as to one set of facts, there is an inference that all omissions are understood as exclusions. 2A Singer § 47.23, at 304–07; *see, e.g., Dotson v. City of Ames,* 251 Iowa 467, 472, 101 N.W.2d 711, 714 (1960) ("[B]y granting control over animals running at large the legislature has clearly excluded power over those confined."). As applied to this case, this maxim would mean that because section 708.12 provides the specific circumstances when a no-contact order is required to be continued for five years, the legislature impliedly intended to prohibit the continuation of the order in any other circumstance. This maxim, on the surface, tends to support the result reached by the majority.

Yet, the maxim is only a rule of statutory construction; it is not a rule of law. *See* 2A Singer § 47:23, at 315 ("This rule is a rule of statutory construction and not a rule of law."); *id.* § 47:24, at 319 ("It acts merely as an aid to determine legislative intent and does not constitute a rule of law."); *id.* § 47:25, at 325–26 (" 'The maxim ... requires great caution in its application, and in all cases is applicable only under certain conditions.' "); *id.* § 47:25, at 332 ("The maxim is not a rule of substantive law but one of statutory construction and thus should be used with care."). Moreover, the application of the maxim in this case would render the following sentence in the statute a nullity: "Upon final disposition of the criminal or juvenile court action, the court shall make a determination whether the no-contact order should

---

**1.** It is not particularly unusual for our legislature to refrain from specifically declaring the standard for the continuance or modification of an injunction, as well as the issuance or dissolution of an injunction. *See, e.g.,* Iowa Code § 99.2 (setting forth procedure to enjoin operation of a gambling or prostitution house as a nuisance, but not containing standard upon which injunction will issue). In fact, our rules of practice governing injunctions do not specify any standard of proof. *See* Iowa Rs. Civ. P. 1.1501–11. Instead, we imply the preponderance-of-the-evidence standard applicable to civil proceedings, unless otherwise specified. *See Kennedy,* 251 Iowa at 421, 100 N.W.2d at 896; *Fed. Land Bank v. Swanson,* 231 Neb. 868, 438 N.W.2d 765, 767 (1989) (party seeking injunction must establish claim by a preponderance of the evidence).

be modified or terminated." Iowa Code § 708.12(2). " 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' " 2A Singer § 46:06, at 181; *accord Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002) ("Each term [in a statute] is to be given effect, so that no single part is rendered insignificant or superfluous." (Citation omitted.)). If the legislature only intended no-contact orders to be modified by requiring them to be continued for five years, and that this action only could be taken in the event of a disposition of guilt, there would be no reason to include the preceding sentence directing the court to decide if no-contact orders entered at the initial appearance should be continued upon final disposition of the underlying case. We are obligated to give effect to all provisions in interpreting the statute. *Id.;* 2A Singer § 46:06, at 181.

From my reading of section 708.12, it is apparent that the legislature wanted the court to determine the duration (and make any modification) of all no-contact orders in all instances at the conclusion of the underlying case. Certainly, the safety of others was the paramount concern of the legislature in providing for a no-contact order, and this concern supports this approach. Once the court has determined at the beginning of the case that the safety of another is in jeopardy, and that the person needs the protection of a no-contact order, such findings are not diminished, in any fashion, because the offender is ultimately found not to have committed the underlying crime *beyond a reasonable doubt.* An acquittal in a criminal case in no way means that the victim is no longer at risk or that there was no probable cause that the defendant engaged in harmful conduct to support safety concerns of the victim. Thus, in addition to instructing the court to determine the duration of the no-contact order at the conclusion of the underlying

case, the statute merely provides that if the defendant is in fact found guilty of a crime, then the no-contact order must continue for five years even if the defendant would be monitored on probation. It appears the legislature include the five-year provision for two reasons: (1) to provide long-term protection for a victim in those circumstances when the defendant's conduct constituted a crime, and (2) to make certain courts would not terminate a no-contact order simply because the defendant would be supervised on probation. In other words, the legislature wanted to make certain that probation could not be used as a justification or basis to terminate a no-contact order when the court performs its duty to "determine whether the no-contact order should be modified or terminated" upon final disposition of the criminal case. Iowa Code § 708.12(2).

In the end, the inescapable conclusion is that our legislature properly assumed under section 708.12 that a no-contact order entered by a magistrate would not automatically terminate at the conclusion of an underlying proceeding, and the legislature wanted the court to determine the status or duration of the no-contact order at the final disposition of the underlying case, subject only to a few mandated outcomes under certain circumstances relating to a disposition of guilt.

A criminal charge of harassment or stalking has two general outcomes. It can result in a disposition of guilt or a disposition of acquittal. Notwithstanding, the need to protect the victim does not necessarily disappear with an acquittal. In fact, an acquittal may give rise to even a greater urgency to protect the victim. Thus, under either outcome, the need to protect the victim is present. Our legislature would not have enacted a scheme, as found by the majority, to provide for continued protection of the victim in one circum-

stance, but not the other. I would hold that the district court properly continued the no-contact order entered in this case following the acquittal.