**IN THE COURT OF APPEALS OF IOWA**

No. 15-0027
Filed December 23, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SHERRY ANN OATS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Thomas G. Reidel

(plea) and Mark D. Cleve (sentencing), Judges.


        A defendant convicted of multiple counts of child endangerment

challenges the scope of the no-contact order issued at sentencing.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Linda J. Hines,

Assistant Attorneys General.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

In a victim impact statement read at her mother's sentencing hearing, S.D. asserted: "She did not protect me and the other kids." Sherry Oats pleaded guilty to five counts of child endangerment for allowing five children in her care—including her daughter—to have unsupervised contact with known sex offenders. On appeal, Oats argues her sentence is illegal because the order of protection lists eight children, three of whom are not victims of her offenses. Because those children are immediate family members of victims, we find the no-contact order complied with Iowa Code section 664A.1(1) (2013) and affirm.

## I.      Background Facts and Proceedings

Understanding the family structure helps frame the issue in Oats's appeal. Oats has three daughters: Jenni, Jessica, and S.D. Jenni and Jessica each have children of their own. Jenni has a son, C.F., and a daughter A.F. Jessica has two sons, E.E. and A.A., and one daughter K.E. At various times relevant to this case, Oats cared for her daughter S.D. and her grandchildren, C.F., A.F., E.E., A.A., and K.E. Oats also babysat two additional children: N.J. and Z.J.

In November 2011, when Oats was babysitting for then eight-year-old N.J., she allowed the child, by himself, to visit the residence of a man she knew to be a registered sex offender. These visits occurred at least four times. During one of those visits, N.J. suffered bodily injury from acts by the sex offender. Between November 2011 and December 2013, Oats also allowed her daughter S.D., her grandchildren A.F. and A.A., and N.J.'s younger brother Z.J. to have unsupervised contact with two sex offenders in the neighborhood.

In May 2014, the State filed its trial information against Oats, alleging eight counts of child endangerment involving five victims: N.J., Z.J., S.D., A.F. and A.A. Count one charged Oats with child endangerment resulting in bodily injury to N.J., a class "D" felony, in violation of Iowa Code section 726.6(6) (2011). Counts two, three, and four charged Oats for endangering N.J., without bodily injury, aggravated misdemeanors in violation of section 726.6(7). Counts five, six, seven, and eight charged Oats with child endangerment, aggravated misdemeanors, for knowingly allowing registered sex offenders to have unsupervised access to children in her care. The State listed Z.J., S.D., A.F., and A.A., respectively, as the victims in those four counts.

On August 25, 2014, as part of the pending criminal case, the district court entered an order prohibiting Oats from having contact with the following children in her family: her daughter, S.D.; her granddaughter, A.F.; A.F.'s brother, C.F.; her grandson, A.A.; and A.A.'s siblings, E.E. and K.E. The court issued the order pursuant to Iowa Code section 664A.2(1). Oats was served with the order in the Scott County jail.

On November 5, 2014, Oats reached an agreement with the State. She entered guilty pleas to counts one, five, six, seven, and eight (one count for each of the five victims); in turn, the State dismissed counts two, three, and four (all involving N.J.).

At the sentencing on December 11, 2014, the State sought consecutive prison sentences because of the five separate victims. The prosecutor presented victim impact statements and requested "a five-year sentencing no-

contact order." The defense asked for deferred judgments or "some other form of probation." Defense counsel said his client was "hoping to move on" but "not without consequence." He noted that caring for children had been a big part of Oats's life but that she was reconciled to building "a life basically without kids in it." Counsel also said: "She would agree to that five-year non-contact order. That's perfectly reasonable. And then she will be on the abuse registry."

The district court imposed incarceration and ordered the sentence imposed under Count 1 shall run consecutive to the sentence imposed under Count 5, and that Count 6 shall run consecutive to those two counts, and that Counts 7 and 8 shall run concurrent to those counts. Pursuant to section 664A.5, the court imposed an order of protection prohibiting Oats from having contact with S.D., C.F., A.F., A.A., E.E., K.E., N.J., and Z.J.

It is that protective order that spurs Oats's challenge on appeal.

## II. Standard of Review

When a defendant challenges her sentence on appeal, "[d]epending upon the nature of the challenge, the standard of review is for the correction of errors at law or for an abuse of discretion." *State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006). In this case, Oats claims the sentencing court was not authorized by statute to restrict her contact with children who were not "victims" in the child endangerment prosecution. Accordingly, our review is for correction of legal error. *See State v. Shearon*, 660 N.W.2d 52, 57 (Iowa 2003) (noting appellant challenged "legality of his sentencing" so review was for "correction of errors at law"); *see also State v. Wiederien*, 709 N.W.2d 538, 540 (Iowa 2006) (explaining

where appeal raises issue of statutory interpretation, review is for correction of errors at law).

## III. Analysis

Oats asks us to vacate the no-contact order issued by the sentencing court and to remand the case for entry of an order limiting the protected parties "to those persons properly defined as 'victims'" under chapter 664A. Oats maintains C.F., E.E., and K.E. do not meet the definition of "victims" as that term is defined in section 664A.1(3).

We turn first to the key definitions in chapter 664A. A "no-contact order" means

> a court order issued in a criminal proceeding requiring the defendant to have no contact with the alleged victim, persons residing with the alleged victim, or members of the alleged victim's immediate family, and to refrain from harassing the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family.

Iowa Code § 664A.1(1).

A victim means "a person who has suffered physical, emotional, or financial harm as a result of a public offense, as defined in section 701.2,[1] committed in this state." Iowa Code § 664A.1(3).

Oats acknowledges that on August 25, 2014, the district court issued a temporary no-contact order under the authority of section 664A.3. That section provides that when a person is taken into custody, the court may enter a no-contact order if it finds (1) probable cause exists to believe any public offense

---

[1] "A public offense is that which is prohibited by statute and is punishable by fine or imprisonment." Iowa Code § 701.2.

referred to in section 664A.2(1) has occurred and (2) the presence of or contact with the defendant poses a threat to "the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family." Iowa Code § 664A.3(1). The August 25 order prohibited Oats from contacting S.D., C.F., A.F., A.A., E.E., and K.E. Three of those children—S.D., A.F., and A.A.—were alleged victims in the child endangerment case against Oats. The other three—C.F., E.E., and K.E.—were siblings of victims A.F. or A.A., as well as nieces and nephews of S.D. The minutes of evidence also indicated these children have resided with S.D. on occasion. Accordingly, the non-victims were proper protected parties under the language of section 664A.3(1)(b).

Oats also recognizes the district court has authority under section 664A.5 to modify a previously entered no-contact order when the defendant is convicted of or pleads guilty to a public offense referred to in section 664A.2(1). *See* Iowa Code § 664A.5 (stating court "may enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered . . . regardless of whether the defendant is placed on probation"). After Oats entered her guilty pleas, the sentencing court modified the existing no-contact order, directing that the order remain in effect until December 11, 2019. The no-contact order issued on December 11, 2014 listed S.D., C.F., A.F., A.A., E.E., and K.E as protected parties and added victims N.J. and Z.J. to the list.

Oats argues the problem with this permanent no-contact order is "it is not limited to 'victims' as that term is defined in the Code." She contends the

sentencing court exceeded its authority under sections 664A.1(1) and (3). We disagree with Oats's interpretation of the no-contact provisions in chapter 664A. We find no ambiguity in the provisions of chapter 664A addressing who may be protected by a no-contact order.

Section 664A.1(1) allows courts to issue no-contact orders to protect alleged victims, as well as persons residing with alleged victims and members of the alleged victim's family. *See Wiederien*, 709 N.W.2d at 546 (Cady, J., dissenting) ("Certainly, the safety of others was the paramount concern of the legislature in providing for a no-contact order."). The definition of a no-contact order as "a court order issued in a criminal proceeding" encompasses both temporary orders issued under section 664A.3 and permanent orders issued under section 664A.5. *See* Iowa Code § 664A.1(1). Section 664A.3(5) states a temporary no-contact order "shall restrict the defendant from having contact with the victim, persons residing with the victim, or the victim's immediate family." The children at issue here, C.F., E.E., and K.E, are members of the victims' families and households. In issuing the temporary no-contact order, the district court determined that contact with Oats posed a threat to those children who resided with her victims or were members of their families. *See* Iowa Code § 664A.3(1)(b).

Section 664A.3(3) anticipates the transition between temporary and permanent orders: "Upon final disposition of the criminal or juvenile court action, the court shall terminate or modify the no-contact order pursuant to section 664A.5." Rather than terminate the temporary no-contact order, in this case, the

sentencing court modified that order to add two victims and to extend its duration for five years from the date of judgment. The district court was authorized by sections 664A.1(3), 664A.3(1)(b), and 664A.5 to "continue the no-contact order already in effect"—including the protection extended to family and household members of the child endangerment victims. *See generally State v. Lopez*, ___ N.W.2d ___, 2015 WL 7890031, at *2, *7 (Iowa 2015) (discussing five-year no-contact order entered for child victim *and his sister*). We find no error in the sentencing court's issuance of the no-contact order.

**AFFIRMED.**