# IN THE COURT OF APPEALS OF IOWA

No. 20-0075
Filed June 16, 2021

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**KEITH LYNCH,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Dickinson County, Nancy L. Whittenburg, Judge.

　　A defendant appeals the imposition of a no-contact order following his conviction for child endangerment. **AFFIRMED.**

　　Jack Bjornstad of Jack Bjornstad Law Office, Spirit Lake, for appellant.

　　Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

　　Considered by May, P.J., Greer, J., and Blane, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

Keith Lynch was convicted of child endangerment regarding his daughter, four-year old F.L.  Before sentencing, Lynch filed an application to cancel a no-contact order.  The court held a hearing regarding the motion and, as part of the sentencing, extended the no-contact order against Lynch as to F.L.  Lynch contends the extension of the no-contact order for a period of five years was unreasonable, was imposed by a judge who exhibited personal hostility toward him, and violated his constitutional rights to familial integrity.  Upon our review, we do not accept Lynch's contentions and affirm imposition of the no-contact order.

**Background facts and procedure.**

In 2017, Lynch's ten-year marriage to his wife, Charleen, was deteriorating.  They were contemplating divorce.  Charleen took their two daughters, C.L. and F.L., and moved out.  On November 20, 2017, Lynch took their family dog to the veterinarian for surgery in the morning.  That afternoon, Charleen along with F.L., brought the dog back to the family acreage.

What occurred at that time is disputed between Lynch and Charleen.  Charleen contended that Lynch approached her from behind, threw her to the ground, placed a pistol to the back of her head, and pulled the trigger several times, but it misfired.  This all occurred in front of F.L.  Charleen escaped and drove away with F.L., who Charleen described as screaming and crying.  She called 911 and reported the events to the police.  On November 21, 2017, based upon her version, the Dickinson County Attorney filed charges against Lynch that included attempt to commit murder, going armed with intent, willful injury, domestic abuse assault, harassment, and child endangerment.  Also on that date, pursuant to Iowa Code

section 664A.3 (2017), the court entered a temporary no-contact order against Lynch as to Charleen and both daughters.[1] While in jail awaiting trial, Lynch filed for divorce from Charleen and sought custody of their two children.

Lynch pled not guilty to the criminal charges. At the jury trial, Lynch testified that the altercation with Charleen never occurred. He acknowledged that when Charleen and F.L. came back to the acreage with the dog, he was in an outbuilding—his shop—despondent over the divorce. F.L. came in and got him to come out. He and Charleen began to squabble, and he pulled a pistol out of his pants pocket, put it to his head, and asked her if she wanted to say good-bye to him. He then pulled the trigger, but the pistol misfired. All of this witnessed by F.L. Lynch then went back into the shop, slammed the door, and threw the pistol on to his work bench. Charleen left with F.L.

The jury returned its verdict, finding Lynch not guilty of attempted murder, going armed with intent, willful injury, domestic abuse assault or harassment—the charges related to Charleen, but guilty of child endangerment—the charge related to F.L. Lynch filed an application to cancel the no contact order, which the court scheduled for hearing at the time of sentencing. At the sentencing, after hearing evidence, the trial court suspended a two-year term of incarceration and placed Lynch on probation. The court also cancelled the temporary no-contact order as to Charleen and older daughter, C.L., but extended it with regard to F.L. for five years. Lynch appeals the court's extension of the no-contact order.

---

[1] On August 1, 2018, the order was modified to allow Lynch to have telephone contact with his daughters.

**Discussion.**
**Standard of review.**

A challenge to the reasonableness of a no-contact order is reviewed for an abuse of the trial court's discretion. *State v. Hall*, 740 N.W.2d 200, 202 (Iowa Ct. App. 2007). To the extent a constitutional right is implicated, review is de novo. *Id.*

**Preservation of error.**

The State contests error preservation as to Lynch's claim that the extension of the no-contact order violates his constitutional right to familial integrity.[2] Following the jury verdict and before sentencing, Lynch filed an application to cancel the temporary no-contact order that the court had issued when the complaints were filed. The application contended that since the jury had found Lynch not guilty of five of the six counts listed in the trial information the no-contact order should be cancelled in its entirety. No other reasons were set out. At the hearing on the application, Lynch testified about his concern that Charleen's new paramour was a convicted sex offender and an extension of the no-contact order would prevent him from being able to protect F.L. from him. However, neither Lynch nor his attorney mentioned that extending the no-contact order would be a violation of his constitutional right to familial integrity.

---

[2] We acknowledge that a parent's right to the care and custody of their child is protected as a due process right. *See F.K. v. Iowa Dist. Ct. For Polk Cnty.*, 630 N.W.2d 801, 808 (Iowa 2001), *as amended on denial of reh'g* (July 27, 2001) ("The Supreme Court has also recognized that a parent's right to the care and custody of a child is reciprocated by the child's liberty interest in familial association, likewise protected by the Due Process Clause.").

The State argues that even though the no-contact order was extended at sentencing, no-contact orders are civil in nature, citing *State v. Wiederien*, 709 N.W.2d 538, 543 (Iowa 2006) (Cady, J., dissenting), and subject to error preservation rules, *see State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997) (holding issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal.)  However, our supreme court has recognized an exception when a criminal defendant appeals from a criminal sentencing.  *State v. Gross*, 935 N.W.2d 695, 698 (Iowa 2019) (when a party appeals a sentence, some issues may be raised for the first time on appeal even though they were not raised in the district court.)

We more recently addressed an appeal of imposition or extension of a no-contact order under Iowa Code chapter 664A in *State v. Grover*, No. 14-0072, 2014 WL 7343514 (Iowa Ct. App. Dec. 24, 2014).  There we said:

> Chapter 664A applies, as relevant here, "to no-contact orders issued for violations or alleged violations of sections 708.2A . . . and any other public offense for which there is a victim."  Iowa Code § 664A.2(1).  "A public offense is that which is prohibited by statute and is punishable by fine or imprisonment."  Iowa Code § 701.2.  A "victim means a person who has suffered physical, emotional, or financial harm as a result of a public offense."  Iowa Code § 644A.1(3).  Grover was initially charged with a domestic abuse assault, a violation of section 708.2A, and then ultimately pleaded guilty to a "public offense," aggravated misdemeanor assault, for which there was a "victim," K.S.  It is thus not disputed that chapter 664A is applicable to this proceeding.
> Chapter 664A authorizes two different no-contact orders.  First, the court is required to issue a temporary no-contact order at the time of initial appearance when a person is arrested for an offense to which chapter 664A is applicable upon finding the following: (1) probable cause exists to believe the offense occurred; and (2) the presence or contact with the defendant poses a threat to the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family.  Iowa Code § 664A.3(1).  Second, chapter 664A authorizes the court to enter a

permanent no-contact order not to exceed five years in duration if the defendant is convicted of a covered offense. *See* Iowa Code § 664A.5; *State v. Wiederien*, 709 N.W.2d 538, 542–43 (Iowa 2006) (holding the court lacks authority to continue no-contact order where the defendant is acquitted).

*Id.* at *2 (alteration in original). We concluded:

A challenge to an illegal sentence can be raised at any time. *State v. Hoeck*, 843 N.W.2d 67, 71 (Iowa 2014). We review a challenge to the legality of a sentence for corrections of errors of law. *See* Iowa R.App. P. 6.904; *Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001).

*Id.* Thus, we determined that a defendant may challenge the imposition or extension of a no-contact order under chapter 664A without having first raised the issue before the district court. Based on *Grover*, we find Lynch's issues are preserved for our review.

### 1. Whether the extension of the no-contact order was clearly unreasonable and therefore an abuse of discretion?

Lynch first contends that the trial court's extension of the no-contact order[3] is unreasonable. He argues that a no-contact order that prevents contact with his daughter for seven years is worse than a prison sentence. He notes that he did not physically injure F.L. Following his suicide attempt, he sought and completed mental health counseling. At sentencing he offered a report from his V.A. counselor that he had undergone counseling and was no longer a danger to harm himself or anyone else, including F.L. Lynch points out that Charleen has moved

---

[3] Lynch refers to the no-contact order as a "seven year" no contact order. The temporary no-contact order pursuant to Iowa Code section 664A.3 was issued on November 17, 2017, and remained in place until the sentencing on December 17, 2019, when the court extended the no-contact order for a period of five years under Iowa Code section 664A.5.

to California with F.L. and although the temporary no-contact order was modified in August 2018 to allow telephone contact with F.L., he has been denied this contact. As can be seen, Lynch's focus is on how the no-contact order impacts him; not how his criminal conduct has affected his child.

The court heard evidence of how the event giving rise to Lynch's conviction for child endangerment impacted F.L. As a result of observing Lynch's attempted suicide, F.L. is diagnosed as suffering from PTSD (post-traumatic stress disorder), a recognized psychiatric diagnosis (DSM-V). She began wetting herself, developed a nervous tick in her right eye, exhibited unusual behavior ("freezes up") when she is supposed to talk to her father on the telephone, and has been attending counseling with a trauma specialist since the event up to the time of the sentencing hearing. F.L.'s counselor recommended she not have personal contact with her father.

Lynch argues that because he did not physically harm F.L., the no-contact order is unreasonable. But we note the statute does not require physical harm. Iowa Code section 664A.1(3) states: "'Victim' means a person who has suffered physical, emotional, or financial harm as a result of a public offense, as defined in section 701.2, committed in this state." During his allocution, Lynch acknowledged inflicting emotional harm on F.L. by attempting his suicide in her presence.

Iowa Code section 664A.5 provides:

> If a defendant is convicted of . . . a public offense referred to in section 664A.2, subsection 1, . . . the court shall either terminate or modify the temporary no-contact order issued by the magistrate. The court may enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered . . . regardless of whether the defendant is placed on probation.

Under the facts of this case the statute allows for imposition of a five-year no contact order.

> [T]he decision of the district court to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters. An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. [Lynch] has the burden of showing an abuse of discretion.

*State v. Knipfel*, No. 18-1739, 2019 WL 2524123 at *1 (Iowa Ct. App. June 19, 2019) (first alteration in original) (citations omitted).

Lynch has not shown an abuse of discretion in the extension of the no-contact order. The requirements of section 664A.5 were clearly met. The statute allows a five-year period. Evidence supports F.L. suffered serious emotional harm due to Lynch's criminal conduct. F.L. has undergone treatment for her emotional injury and continues to require counseling. Lynch did not present any evidence to show his contact with F.L. will not result in further emotional harm or not impede her counseling and efforts at recovery.

Lynch also contends that the district court did not make a finding that he continues to pose a threat to F.L. However, as we can see, section 664A.5 does not require such a finding. The finding is inferred by the defendant's conviction that he or she poses a danger to the victim. Only section 664A.8, which deals with a later extension of a modified no-contact order, requires the court to extend a no-contact order "unless the court finds that the defendant no longer poses a threat to the safety of the victim, persons residing with the victim, or members of the

victim's family." The current no-contact order was not issued pursuant to 664A.8. *See State v. Epping*, 878 N.W.2d 277, 297 n.1 (Iowa Ct. App. 2016).

## 2. Whether the sentencing judge exhibited personal hostility?

Lynch claims that the judge at sentencing erroneously attacked his military record and denigrated his injuries received during his service. At trial, Lynch was asked about his military service and injuries he received. He testified that during a training exercise, he sustained injuries from a "friendly fire" artillery round that landed close by. He also suffered a wrist injury, not related to combat.

In explaining her reasons for not granting a deferred judgment, the sentencing judge listed a number of factors. She described that the crime involved a firearm loaded with ammunition. She noted there was an altercation with his wife in front of F.L. and Lynch's conduct resulted in psychological and emotional trauma of a significant magnitude. She also cited that it took Lynch a long and circuitous route to accept responsibility for his conduct or to express remorse or apologize to his victim; that Lynch's focus has been on how this has all affected him and not others. After outlining these reasons, the judge stated:

> And, in short, I also find your propensity to constantly remind everyone that you served in the military to be a tad offensive, as though that gives you some special consideration both at trial and here. Everyone thanks repeatedly members of our armed forces, and you're deserving of thanks too. But you wave that like a flag that gives you some special consideration. In view of what you testified to, I think the Court is within its boundaries to find that your service was limited to clerical work, your injury that you sustained was self-inflicted because you arrived late at a training exercise and your commanding officer told you it was on you to find your sleeping accommodations that evening because you had arrived late. There are many of us who know and are related to true war heroes, those who served in World War I, those who served and suffered the effects of the mustard gas that was inflicted upon the troops, those who suffered on the front lines in World War II and suffered injuries

and horrific conditions that existed in World War II and the things that the people were forced—young men were forced at eighteen and nineteen and twenty years old to witness, to protect our freedoms. The wars in Vietnam, in Iraq and Afghanistan, the people came home without limbs; the people that didn't come home. And, repeatedly, repeatedly, you have reminded all of those in this proceeding from day one that you—your service in the military as a marine carries great import. And, again, we don't denigrate or deny you the gratitude you're entitled to. But the Court takes a tad bit of offense at your usage of that service, which again was limited to a clerical occupation, to gain some sort of advantage in this proceeding. It— it's a disservice to those who really made a sacrifice by serving in the armed forces.[4]

So I feel that this is the appropriate sentence, that deferred judgment is not warranted in this matter. And I have sentenced you accordingly.

Our judicial code of conduct provides a judge should disqualify him or herself under certain circumstances.[5]

More recently we said:

[A] judge need only recuse himself or herself if the alleged personal bias, prejudice, or knowledge of disputed evidentiary facts stems from an *extrajudicial* source. Iowa Code section 602.1606(1) ("A judicial officer is disqualified from acting in a proceeding, except upon the consent of all of the parties, if any of the following circumstances exists: a: The judicial officer has a personal bias or prejudice

---

[4] The judge's comments remind us of the lyrics, "Levon wore his war wound like a crown." *Levon, on Madman Across the Water*, music by Elton John, lyrics by Bernie Taupin (Universal Music Group 1971).

[5] The relevant rules are:

Rule 51:2.3: BIAS, PREJUDICE, AND HARASSMENT.

(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

Also relevant is the following:

Rule 51:2.11: DISQUALIFICATION

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."); *State v. Smith*, 282 N.W.2d 138, 142 (Iowa 1979) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.") (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *In re J.A.P.*, No. 09-0486, 2009 WL 4241795, at *4 n.6 (Iowa Ct. App. Nov. 25, 2009) ("Extrajudicial" means "Outside court; outside the functioning of the court system.") (quoting Black's Law Dictionary 606 (7th ed. 1999)); *State v. Hunter*, No. 01-1919, 2002 WL 31757491, at *3 (Iowa Ct. App. 2002) ("Only personal bias or prejudice stemming from an extrajudicial source and resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case ranks as a disqualifying factor; judicial predilection does not.").

*Long v. State*, No. 19-0726, 2020 WL 2061934, at *5 (Iowa Ct. App. Apr. 29, 2020) (emphasis in original).

Mere speculation as to judicial bias is not sufficient to prove the grounds necessary for recusal, *see State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994), nor is a judge's perception or attitude arising from the judge's participation a disqualifying factor. *See Millsap*, 704 N.W.2d [426,] 432 [(Iowa 2005)]. Rather, personal bias or actual prejudice stemming from an extrajudicial source must be shown.

*Miller v. State*, No. 13-1240, 2015 WL 1815903, at *5 (Iowa Ct. App. Apr. 22, 2015).

Applying these standards to the sentencing judge's statements, we find they do not rise to the level of personal bias or hostility, do not amount to a need to recuse, and do not constitute a violation of our judicial canons.

### 3. Whether the no-contact order violates Lynch's constitutional right to familial integrity?

Finally, Lynch argues that the issuance of the no-contact order violates his constitutional right to familial integrity. Under similar facts of a parent being found guilty of child endangerment of one's own child, we addressed this identical constitutional claim and found no violation. *See State v. Epping*, 878 N.W.2d 277, 278–79 (Iowa Ct. App. 2016). In *Epping*, we accepted that a parent has a

fundamental liberty interest to parent their children. 878 N.W.2d at 279. We went

on state:

> However, the issuance of a no-contact order pursuant to Iowa Code section 664A.5 survives strict scrutiny because it is narrowly tailored to the State's compelling interest in protecting the child victims from future harm. *See State v. Corbett*, 158 Wash. App. 576, 242 P.3d 52, 63–64 (2010) (following the defendant's conviction of four counts of child rape in the first degree, the court upheld the no-contact order between the defendant and his biological children, as the children were within the class of persons victimized). While the State may not "inject itself into the private realm of the family," this concept is limited to situations in which the parent is adequately caring for the children. *See Troxel v. Granville*, 530 U.S. 57, 68–69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Here, Epping's conviction of child endangerment—with her own children as the victims—rebuts the presumption of fitness; consequently, we conclude no constitutional rights were violated upon the issuance of the no-contact order. *See id.* at 68, 120 S. Ct. 2054 (noting "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family").

*Id.* at 279.

On our de novo review, based upon *Epping*, we find Lynch suffers no

deprivation of his constitutional rights.

**Conclusion.**

Having reviewed each of Lynch's contentions, and finding none with merit,

we affirm the district court's extension of the no-contact order.

**AFFIRMED.**